## BRUILETTS CREEK COAL COMPANY v. POMATTO.

[No. 21,469.    Filed May 25, 1909.]

1. APPEAL.—*Parties.*—*Decedents.*—A vacation appeal taken in the
name of a deceased person is a nullity and confers no jurisdiction
upon the court to which it is taken.   p. 290.

2. APPEAL.—*Parties.*—*Decedents.*—A vacation appeal taken against
an appellee who died after the rendition of judgment and before
service of the notice of appeal, is ineffectual.   p. 290.

3. APPEAL.—*Parties.*—*Death of Appellee.*—A term-time appeal
granted during appellee's lifetime confers jurisdiction upon the
Supreme Court, although appellee died before the filing of the
transcript and assignment of errors on appeal.   p. 290.

4. APPEAL.—*"Taking" Appeal.*—*Meaning.*—*Statutes.*—Under §677
Burns 1908, §636 R. S. 1881, providing that in case of the death
of a party "before an appeal is taken," such appeal may be taken
by or against the proper representative, a term-time appeal is
"taken" when the appeal is granted and the terms thereof are
fixed by the circuit court, and a vacation appeal is "taken" when
notice thereof is given to the appellee.   p. 292.

5. APPEAL.—*Parties.*—*Death.*—*Substitution.*—Where the appellant,
in a term-time appeal "taken" before appellee's death, but per-
fected after such death, ascertains the fact of such death, it is
the duty of appellant to apply for a substitution of the proper
representative as appellee.   p. 293.

6. PLEADING.—*Complaint.*—*Master and Servant.*—*Mines.*—*Danger-
ous Switch.*—A complaint alleging that defendant coal company
knew that its entry switch was liable to become clogged with
loose coal so that it could not be operated, that by the exercise
of ordinary care defendant could have known that it was clogged,
that defendant negligently failed to inspect such switch, that
plaintiff did not know of such condition and drove a car over
such entry track and by reason of such condition his car was
overturned, to his damage, states a cause of action.   p. 294.

7. MASTER AND SERVANT.—*Assumed Risk.*—*Coal Mining.*—*Danger-
ous Switch.*—A mature servant who undertakes to operate a coal
mine car running upon an entry track which contains a switch,
such servant being required to operate such switch knowing that

it is liable to become clogged with falling coal, assumes the risk of the dangers flowing therefrom.  p. 297.

From Clay Circuit Court; *John M. Rawley,* Judge.

Action by Michael Pomatto against the Bruiletts Creek Coal Company.  From a judgment on a verdict for plaintiff for $5,000, defendant appeals.  Transferred from Appellate Court under §1394 Burns 1908, cl. 2, Acts 1901, p. 565, §10. *Reversed.*

*Elmer E. Stevenson, Bays & Bays* and *S. M. McGregor,* for appellant.

*A. W. Knight, James L. Price* and *John O. Piety,* for appellee.

MONTGOMERY, C. J.—Michael Pomatto recovered a judgment against appellant on June 4, 1907, on account of a personal injury sustained while in appellant's service.  Appellant prayed and was granted a term-time appeal.  An appeal bond in the sum of $6,500, with the Bankers Surety Company as surety thereon, was filed on July 25, in accordance wit' the order of the court.  The transcript was filed in the office of the clerk of this court on September 6, 1907, with an assignment of errors in which the name of Michael Pomatto appeared as appellee.

We are confronted, first, with a motion to dismiss this appeal for want of jurisdiction.  On June 16, 1908, Archie Ruatto, as administrator of the estate of Michael Pomatto, deceased, filed a motion, supported by affidavits, to dismiss this appeal, for the reason that when the record and assignment of errors were filed said Michael Pomatto was not then living, and that no person had since been substituted as appellee in his stead.  It appears from the motion to dismiss, and affidavits in support thereof, that Michael Pomatto died on July 30, 1907, in the Cook county hospital in the city of Chicago, and was buried on August 1, 1907, at the village of Braceville, Illinois; that on June 9, 1908,

Archie Ruatto was, by the clerk of the Vermillion Circuit Court, appointed, and on the same day he duly qualified, as administrator of the estate of said Michael Pomatto, deceased.

A number of cases are cited as supporting this motion, but in none of them was the question now presented involved or discussed. A vacation appeal taken in the name of a deceased person as sole appellant ·is a nullity, and confers no jurisdiction upon an appellate court. *Taylor* v. *Elliott* (1876), 52 Ind. 588; *Taylor* v. *Elliott* (1876), 53 Ind. 441; *Branham* v. *Johnson* (1878), 62 Ind. 259; *Moore* v. *Slack* (1894), 140 Ind. 38.

It is also settled that an attempted appeal in vacation against an appellee who has died since the rendition of the judgment and before service of notice of such appeal is ineffectual. *Laporte Land Co.* v. *Morrison* (1906), 167 Ind. 73; *Ehlers* v. *Hartman* (1906), 37 Ind. App. 617; *Hewitt* v. *Mills* (1901), 27 Ind. App. 218; *Doble* v. *Brown* (1898), 20 Ind. App. 12.

In this case an appeal was granted by the circuit court in the lifetime of the judgment plaintiff, to be perfected upon the filing of a prescribed bond within a specified time, and by the filing in the Appellate Court, within the period allowed by statute, of the transcript, with an assignment of errors. The judgment plaintiff, Michael Pomatto, and all other persons in privity with him, were bound to take notice of such appeal, and to appear and protect their interests in the Appellate Court. A compliance with the terms of the statute, and the order granting such appeal, gave the Appellate Court jurisdiction of the subject-matter in litigation, and of the parties, without further notice. The death of the judgment plaintiff prior to the filing of the transcript did not abate the appeal or affect the jurisdiction of the court to determine its merits. It is not accurate to say that because Pomatto was dead at the time the transcript was filed there was no appellee. His death operated only to transfer the judgment to his personal representative or to

his heirs or legatees, who are bound to take notice of the appeal and take such action as might be deemed appropriate to protect their interests.

There are points of difference between the common-law writ of error and the statutory appeal, but in many respects the principles and rules of practice governing both forms of procedure are similar. In the case of *Green* v. *Watkins* (1821), 6 Wheat. *260, 5 L. Ed. 256, the court, by Mr. Justice Story, discussing the point under consideration, said: "In no case, does a writ of error, in personal actions, abate by the death of the defendant in error, whether it happen before or after errors assigned. If it happen before, and the plaintiff will not assign errors, the representatives of the defendant may have a *scire facias quare executio*[*nem*] *non,* in order to compel him; if it happen after, they must proceed as if the defendants were living, till judgment be affirmed, and then revive by *scire facias.* * * * It is clear, therefore, that at common law, in these cases, a writ of error does not necessarily abate; and that the personal representatives may not only be admitted voluntarily to become parties, but a *scire facias* may issue to require them to become parties." See, also, *Carroll* v. *Bowie* (1848), 7 Gill (Md.) 34. In the case of *Sawyer, Wallace & Co.'s Assignee* v. *Fuqua* (1898), 20 Ky. Law Rep. 1, 41 S. W. 15, 46 S. W. 209, the court pertinently said: "It is claimed by appellee that S. M. Dean having died after the granting of the appeal by the lower court and before the filing of the transcript, the order reviving against his executrix was in effect the granting of an appeal by this court, which, under civil code, sections 738, 739 and 740, it had no jurisdiction to do. * * * Here the appeal was granted regularly by the circuit court, and perfected by filing the transcript. The fact that an appellee died before the transcript was filed did not vitiate the appeal, but merely rendered a revivor necessary. This court had jurisdiction of the appeal granted by the circuit court. The revivor did not bring in a new party in interest. It

merely brought in a new representative of an interest already before the court. The case cited from 2 Ency. Pl. and Pr., 200, where appellee died before notice of the appeal, does not apply. The granting of the appeal by the circuit court was notice to the decedent in this case, and brought him before this court, though it was incumbent on appellant to file the transcript, of which Dean was required to take notice, if living, but which was required to be revived against his personal representative should he die." In the case of *Howard* v. *C. Yale, Jr., & Co.* (1875), 27 La. Ann. 621, the court said: "Judgment was rendered against the defendants. From this judgment they moved, in open court, for an appeal, which was granted upon their furnishing bond as required by law. Before the bond was filed, the plaintiff died. Subsequent to plaintiff's death the required bond was filed. Plaintiff's representative now moves to dismiss the appeal upon the ground that he is not properly before the court. We think he is. . Defendants complied with the order of court by furnishing the bond required of them. They could not prevent the plaintiff from dying, nor did his death interfere with defendants' rights. As soon as the bond was filed the jurisdiction of this court attached. If the plaintiff has died since the appeal was granted the proper parties will have to be made here."

A correct interpretation of our statutes in relation to appeals sanctions the practice indicated by the cases cited. Section 677 Burns 1908, §636 R. S. 1881, relating to appeals after the death of any of the parties, reads as follows: "In case of the death of any or all the parties to a judgment before an appeal is taken, an appeal may be taken by, and notice of an appeal served upon, the persons in whose favor and against whom the action might have been revived, if death had occurred before judgment." An appeal is not "taken" in a strict sense until it has been fully perfected; but

4. the taking of a vacation appeal, as the term is used in this connection, has particular reference to the time

of giving notice of such appeal to the appellee, and the "taking" of a term-time appeal, as provided for by §679 Burns 1908, §638 R. S. 1881, has reference to the time of granting the appeal by the circuit court. Section 678 Burns 1908, §637 R. S. 1881, prescribes the practice in the case of the death of a party after an appeal has been so "taken," and reads as follows: "The death of any or all the parties shall not cause the proceedings to abate; but the names of the proper persons being substituted, upon consent or upon notice, the cause may proceed." The death of Pomatto, after the granting of a term-time appeal which was duly perfected, did not oust jurisdiction over the appeal. The assignment of errors pointed out the alleged erroneous rulings upon which appellant relied for reversal of the judgment, and the naming of Pomatto therein as appellee, instead of his successor in interest, was, in a sense, a misnomer, or a mere irregularity in pleading, which could not affect the substantial rights of the parties, and which could be amended by substitution on proper application or motion, as provided in §678, *supra*.

On July 1, 1908, appellant filed an application, supported by affidavits, to have the name of Archie Ruatto, as administrator of the estate of Michael Pomatto, deceased, substituted as appellee herein. It appears from this motion that Pomatto was a single man, who traveled about and lived in different places in Illinois and Indiana, and that appellant knew nothing of his whereabouts from the rendition of said judgment until June 16, 1908. It is charged that the death of Pomatto was purposely concealed from appellant, and the appointment of an administrator deferred, until June 9, 1908. The judgment was rendered June 4, 1907, and Ruatto was not appointed administrator of the decedent's estate until after the expiration of a year and five days. Appeals must be taken and perfected within one year from the date of the final judgment. In our view of the law, the Appellate Court has had jurisdiction over

this case since September 6, 1907, and it makes no material difference whether the failure to appoint such administrator until after the expiration of sufficient time to bar a new appeal was a mere coincidence, or was caused from sinister motives, or in the exercise of a lawful right.   It appears that, upon the appointment of an administrator, application was promptly made to have his name substituted as appellee, and a justifiable excuse given, if any was necessary, for the delay in making the substitution.   This application is in all respects proper, and should be granted, and it is accordingly ordered that the name of Archie Ruatto, as administrator of the estate of Michael Pomatto, deceased, be substituted for the name of Michael Pomatto, as appellee in the cause. The motion of appellee Ruatto, as such administrator, to dismiss this appeal is overruled.

The appellant has assigned errors upon the overruling of (1) its demurrer to the complaint, and (2) its motion for a new trial.

The complaint alleged substantially the following facts: That on September 25, 1903, appellant owned and operated a certain coal mine near the city of Clinton, Vermillion county, Indiana; that decedent, Michael Pomatto, was employed by appellant in said mine in the capacity of a mule driver, and it was his duty under said employment to drive mules in and along the entry of said mine, for the purpose of hauling coal from the rooms to the shaft of the mine; that the mine entry in which the decedent was working extended from the shaft in a westerly direction about four hundred yards; that extending from said main entry and leading south were other entries to rooms from which coal was procured; that one of said south entries was about three hundred yards from the shaft, and in the main entry and side entries tracks had been constructed over which cars were drawn; that said cars were transferred from the track of the main entry to the tracks of the south entries, and from the south entries to the main entry, by means of

a switch, which consisted of two pieces of iron or steel about two feet and nine inches in length, placed parallel with the rails of the main track and on the inside of said rails, and fastened together by means of iron rods; that the usual method of operating this switch was for the driver, whose place is on the front end of the car, when he gets to the switch to throw the same by putting his foot down and against the south piece of iron, and pushing the same up and against the south rail, if the car is to be kept on the track in the main entry, and by putting his foot against the north piece of iron and pushing the same up and against the north rail of the main track, if the car is to be turned on the track to one of the south entries; that when said switch is in position to transfer cars to south entries there is a space of four or five inches between the south piece of iron and the north side of the south rail in the main track; that approaching said south entry from the east and extending up to and past said south entry the bottom of the main entry and track thereon were down grade, so that in taking cars along said entry at that place the speed of the cars was increased; that on the day aforesaid the decedent was proceeding from the shaft with two empty cars drawn by a mule, going west along the track in said main entry, intending to pass said south entry for the purpose of procuring coal; that as he approached said south entry the speed of the cars was increased because of the down grade, and he was standing on the front car with one hand on the car and one on the mule, and as he approached he made an effort to throw said switch so that the car would remain on the track in the main entry, but that at the time there was coal between the south rail of said track and the piece of movable iron constituting a part of said switch close to the south rail, which prevented him from throwing the switch, the result of which was that the mule continued along the main entry and the car turned on the track to the south entry, and the car was thrown up and against a rib of coal on the right-hand side, catching the

decedent between the car and said coal and crushing and injuring him in the abdomen and pelvis; that his injuries were caused by the careless and negligent acts and conduct of appellant, in this: That appellant carelessly and negligently failed and omitted to make proper inspection of the track in and about said switch to see that the same was in proper condition and was not obstructed, clogged or fastened, so that it could be operated in the manner as aforesaid; that appellant well knew coal was apt to get in and about said switch and clog and fasten the same, so that it could not be operated; that due care and caution required that some one be stationed at and about said switch to see that the same was placed in proper position to permit cars to pass in safety and to see that the switch and track were free from obstructions and reasonably safe and fit for use, but that appellant wholly failed and neglected to perform its duty in this regard, and no person was stationed at and about said switch to adjust the same and to see that the switch and track were free from obstructions endangering the safety of persons required to use the same; that appellant knew, or by the exercise of care and caution could have known, that such precautions had not been taken, and that said switch was obstructed and apt to become obstructed by coal, which greatly increased the danger and hazard of decedent's employment; that the decedent did not know, and could not by the exercise of reasonable care or caution have known, that said switch was clogged and obstructed as aforesaid, and of the danger connected therewith by reason of appellant's failure and omission of duty.

The facts alleged may not be sufficient to impose upon appellant the necessity or duty of placing a man at the switch to operate and keep the same in order, but it is averred that appellant knew that coal was apt to get in and about said switch and clog and fasten the same so that it could not be operated by appellee, and by the exercise of reasonable care could have known that said switch was ob-

structed, and, having such knowledge, carelessly and negligently failed to make inspection and to see that the track and switch were unobstructed and in proper condition to be operated in the usual way, and that appellee did not know, and in the exercise of due care and caution could not have learned, that the switch was so clogged and obstructed. It does not appear from the complaint whether Pomatto was experienced or inexperienced in his work, what, if any, instruction he had received with regard to his duties, how long he had been engaged in this particular employment, nor whether the place of the accident was dark or well lighted. The charge of negligence is sufficient to constitute a *prima facie* cause of action, and the denial of all knowledge of the danger on the part of the decedent, in the absence of any contradictory facts, is sufficient to show that the risk was not assumed. The complaint is good as against the demurrer for insufficient facts, and no error was committed by the trial judge in so holding. *Knickerbocker Ice Co.* v. *Gray* (1908), 171 Ind. 395; *Consolidated Stone Co.* v. *Staggs* (1905), 164 Ind. 331; *Princeton Coal, etc., Co.* v. *Roll* (1904), 162 Ind. 115; *Louisville, etc., R. Co.* v. *Bates* (1897), 146 Ind. 564; *George H. Hammond & Co.* v. *Schweitzer* (1887), 112 Ind. 246; *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151.

The motion for a new trial alleges that the verdict is not sustained by sufficient evidence and is contrary to law, and that errors were committed with respect to the admission and exclusion of certain evidence, and in giving and refusing to give certain instructions.

7. 

It appears from the evidence that Pomatto was an experienced miner and driver, and that upon application he was set to work in appellant's mine as a driver on September 25, 1903. Archie Ruatto was sent with Pomatto upon his first trip, to instruct him and to show him the way. The entry through which they went extended east and west, and from this entries led off both north and south. In the mine were a large number of tracks and switches. Some of the switches

are known as latch switches, in common use in coal mines. They are composed of long pieces of iron which can be moved back and forth on fish plates and the ties so as to turn a car on one line of track or the other as desired. A latch switch was placed at a point about two hundred and fifty yards west of the shaft where a track turns south leading to the fifth and sixth south entries. The track for some distance east of this point was down grade going west. When Ruatto and Pomatto came to this switch they stopped, and Ruatto kicked the switch over to the south so that the car could proceed west on the main track. He then moved it back, and had Pomatto to kick it over, and told him that appellant did not have a man at this place, had never had one there, and he would be required to look out for this switch. He was told that at the next switch, where there was a trapdoor, there was a man who would throw the switch on call. They proceeded to the eighth south entry and re-turned with a load of coal to the shaft. Pomatto made the second trip west with two empty cars, threw the latch at the fifth south entry, gave the proper signal to the "trapper," proceeded to the eighth south entry, got his loads and returned. On the third trip he went west with two cars, going pretty fast down the grade, and did not stop, but tried to kick the latch over at the fifth south entry. It did not go over far enough, and the mule went west and the car jumped the track and crushed Pomatto between the car and the rib of coal. He had a driver's lamp with him, which lighted the way several feet in front of him, and when he came within a few feet of the switch he saw small pieces of dirt or coal, about as large as chestnuts, in the switch. He knew that the coal falling from the roof, and the dirt or coal thrown by the feet of mules might clog the switch. In the absence of a man to tend the switch it was the duty of drivers to look out for switches, and to see that they could be moved before going upon them. The latch switch was in good repair, except for the presence of dirt

and a few small particles of coal, and had been in use by a number of drivers during the morning, and operated and passed in safety within five minutes before this accident. It appeared further that appellant caused the switch to be inspected and cleaned every morning, and that it was so inspected and cleaned on the morning of this accident. There was some conflicting evidence upon the subject of a local custom in and about Clinton, under which a man was kept in charge of such switches.

If it be conceded that evidence of such a custom was admissible under the issues, the result must be the same. Pomatto admitted that he was told and knew there was no one in charge of this switch, and that the driver must operate it himself, and therefore assumed the task as a part of his duties. The switch was not out of repair or unsafe for ordinary use. Others besides the decedent had used it with safety immediately prior to the accident. The obstructions to its free use were slight, and only such as Pomatto and other experienced drivers knew might be met with at any time, and were required to look for and remove if necessary in passing. No one had any better opportunity than Pomatto to discover the obstructions, and he says he did discover them, but he had not prepared to stop, and was traveling at a lively speed and could not stop, after seeing the danger, before the car was derailed. The complaint proceeds upon the theory that appellant exposed its servant to a danger of which he was ignorant and of which it had knowledge, without taking any precautions for his safety. The evidence of the decedent himself shows that he was an experienced and competent mine driver, was fairly instructed with respect to his duties and working place, and knew the dangers incident to such employment and the particular perils connected with the switch which caused the accident. It follows that the complaint is not sustained, and, if appellant was chargeable with negligence, the decedent assumed the risk or was guilty of contributory negligence, and can-

not recover upon the undisputed facts. *Chicago, etc., R. Co.* v. *Cobler* (1909), *post*, 481; *Pere Marquette R. Co.* v. *Strange* (1908), 171 Ind. 160; *Indianapolis Water Co.* v. *Harold* (1908), 170 Ind. 170; *National Biscuit Co.* v. *Wilson* (1907), 169 Ind. 442; *Mitchell Lime Co.* v. *Nickless* (1909), 44 Ind. App. 197; *Big Creek Stone Co.* v. *Wolf* (1894), 138 Ind. 496. The court erred in overruling appellant's motion for a new trial.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.