## JOHNSON ET AL. v. SAMUELS ET AL.

[No. 22,893. Filed January 31, 1917.]

1. APPEAL.—*Term-Time.—Bond.—Transcript.—Death of Appellee.—Effect.*—Where an appeal has been prayed in term and time given to file a bill of exceptions and bond, the filing of the bond relates back to the date of the granting of the appeal and fixing of the time for filing the bond, and, if the transcript is filed within 180 days from the date of the judgment and within sixty days from the filing of the bond, the appeal is perfected within the time required by law, and, if appellee dies after the appeal has been prayed and before the filing of the transcript, the heirs and personal representatives are required to take notice of such appeal, and an assignment of errors with the prevailing party as appellee is sufficient. p. 59.

2. APPEAL.—*Term-Time.—Death of Appellee.—Assignment of Errors.*—Where a term-time appeal has been granted, the fact that appellee died before the transcript was filed did not vitiate the appeal, and the appellate court had jurisdiction of the appeal and authority to allow an amendment of the assignment of errors making decedent's heirs parties appellee after the expiration of the time for filing the transcript. p. 60.

3. APPEAL.—*Joint Assignments of Error.—Separate and Several Motion for New Trial.*—If all persons against whom a verdict has been rendered file a motion for a new trial assigning the same causes therefor, either jointly or severally, and a ruling had and exceptions taken to all parties against whom the ruling is made, either jointly or separately, the question is presented to the appellate court on an assignment of errors, whether made by one or all of the parties excepting to such ruling, either by a joint or a separate assignment. p. 60.

4. WILLS.—*Action to Resist Probate.*—*Burden of Proof.*—*Instruction.*—In an action to resist the probate of a will the burden of proof is on the proponents, who must at least establish a *prima facie* case by showing by some evidence all the essential facts necessary to the validity of the will, even though there is no evidence offered by the contestants on the issues raised by the objections, and an instruction shifting such burden of proof is erroneous. p. 61.

5. WILLS.—*Action to Resist Probate.*—*Erroneous Instruction.*—*Cure of Error.*—In an action to resist the probate of a will, error in an instruction improperly shifting the burden of proof to contestants on the issues of fraud and duress was not cured by a later clause of such instruction, or by others, informing the jury that the burden on such question was on the proponents to establish by a preponderance of the evidence that the will was not unduly executed, and that the testator was not unduly influenced to execute it, since the only manner in which the court could have obviated the error in giving the improper instruction was to withdraw it. p. 62.

6. APPEAL.—*Review.*—*Instructions.*—*Reversible Error.*—Where an instruction places the burden of proof on the wrong party the judgment will be reversed. p. 62.

7. WILLS.—*Validity.*—*Undue Influence.*—*Instruction.*—While undue influence in the execution of a will is generally exerted by the beneficiary, yet a will may be invalidated because of undue influence of which the beneficiary was ignorant, so that, in an action to contest a will, an instruction limiting the exercise of undue influence to defendant is erroneous. p. 63.

8. WILLS.—*Action to Resist Probate.*—*Purpose of Evidence.*—*Instruction.*—In an action to resist the probate of a will, where evidence was offered and admitted, for the purpose of showing the interest of a party as a witness, as to alleged statements by contestants that they intend to get a share of the land deeded by testator to a son, and such evidence was not pertinent to any of the issues tendered by the pleadings nor contradictory to the testimony of the witness, it was error to refuse an instruction limiting the consideration of the evidence to the purpose for which it was introduced. p. 63.

9. WITNESSES.—*Impeachment.*—*Statements Made Out of Court.*—*Cross-Examination.*—Where, in an action to contest a will, a witness after testifying as to the testator's sanity, denied on cross-examination that he had stated to another witness that if the latter's mother would testify that the testator was of unsound mind she would receive a certain sum of money, it was error to permit the introduction of evidence to show that the conversation took place, since a witness can only be impeached

by proof of statements made out of court contrary to the testimony of the witness when such testimony relates to a material matter in issue, and where the court in its discretion permits a witness on cross-examination to be interrogated as to specific extraneous offenses and conduct calculated to impair his credibility, the party propounding the interrogatory is bound by the answer given and cannot introduce substantive evidence to contradict it. p. 64.

10. WILLS.—*Action to Resist Probate.—Evidence.—Election by Widow.—Admissibility.*—Since the statutes (§§3025, 3043 Burns 1914, Acts 1891 p. 404, Acts 1885 p. 239) as to a widow's election whether she will take from her husband's estate under the will or under the law, do not authorize an election until after the probate of the will, a written election of the widow was inadmissible in evidence in an action to resist the probate of her husband's will. p. 66.

11. WITNESSES.—*Impeachment.—Evidence of Other Offenses.—Admissibility.*—In an action to resist the probate of a will, where a witness admitted a certain prosecution against her, it was error to permit to be introduced in rebuttal the court records showing the return of an indictment against her and her husband, who was not a party to the action, a verdict and her motion for a new trial which was granted and dismissal of the cause. p. 66.

From Clinton Circuit Court; *Joseph Combs*, Judge.

Action by Mary J. Johnson and others against Mary Samuels and others. From a judgment for defendants, the plaintiffs appeal. *Reversed.*

*Gifford & Gifford, Jesse R. Coleman* and *Kent & Ryan,* for appellants.

*Strawn & Robison* and *Kemp & Kemp,* for appellees.

ERWIN, J.—This action was brought by appellants to resist the probate of the will of John Samuels, deceased. Trial was had by a jury and a verdict was returned in favor of the validity of the will. The assignment of errors presents but one primary question, to wit: the overruling of appellants' motion for a new trial. The motion for a new trial contains many reasons therefor, not all of which are urged by appellants.

We are met at the threshold of this case with a mo-

tion to dismiss this appeal, which motion is based on the grounds that, after an appeal had been granted by the trial court and before the time which the court had given appellants to file their bond, appelle Mary Samuels died and appellants not having filed asignment of errors in this court with the heirs and personal representatives of said Mary Samuels, as appellees, this cause should be dismissed for failure to make proper parties appellee. It is proper to state here that this was a term-time appeal, prayed and granted in the lifetime of appellee Mary Samuels, and time was given to perfect the same by filing bills of exceptions and bond, and the same were filed within the time allowed by the trial court.

We are of the opinion that the case of *Bruiletts Creek Coal Co.* v. *Pomatto* (1909), 172 Ind. 288, 88 N. E. 606 is decisive of the question here presented. When

1. an appeal has been prayed in term and time given to file a bill of exceptions and bond, the filing of the bond relates back to the date of the granting of the appeal and the fixing of the time for filing the bond, and, if the transcript is filed in this court within 180 days from the date of the judgment and within sixty days from the filing of the bond, then the appeal is perfected within the time required by law, and appellee has all the notice the law requires to be given. If appellee dies after the appeal has been prayed and before the filing of the transcript in this court, the heirs and personal representatives are required to take notice of such appeal, and it is not incumbent on appellant to give further notice of his intention to appeal. *Bruiletts Creek Coal Co.* v. *Pomatto, supra.* An assignment of errors with the prevailing party as appellee is sufficient, and is all that is required of appellant.

Another cause for dismissal is based on the amend-

ment of the assignment of errors, which was made by leave of this court upon what was determined at

2. the time to be a proper showing. It is insisted by appellees that, because of such amendment, which consisted in making the heirs and personal representatives of Mary Samuels parties appellee after the expiration of 180 days from the date of the judgment, therefore, appellants are not in court. As was said in *Bruiletts Creek Coal Co.* v. *Pomatto, supra,* in quoting from *Sawyer-Wallace & Co.* v. *Fuqua* (1842), 20 Ky. L. Rep. 1, 41 S. W. 15, 46 S. W. 209: "His death operated only to transfer the judgment to his personal representatives or to his heirs or legatees who are bound to take such action as might be deemed appropriate to protect their interest. * * * The fact that an appellee died before the transcript was filed did not vitiate the appeal, but merely rendered a revivor necessary. This court had jurisdiction of the appeal granted by the circuit court. The revivor did not bring in a new party in interest. It merely brought in new representatives of an interest already before the court. * * * The granting of the appeal by the circuit court was notice to the decedent in this cause, and brought him before this court, though it was incumbent on appellant to file the transcript, of which Dean was required to take notice, if living, but which was required to be revived against his personal representatives should he die."

It is further insisted that the original assignments of error were joint, while the record shows that the motion for a new trial was "separate and several," and the exceptions to the ruling of the court on the motion for a new trial was also "separate and several."

While this court has in some cases held that such an assignment presents no question for our consid-

3. eration, we are of the opinion that such holdings were not intended to apply to a case such as this

one, where the ruling affects all alike, especially where the action is *in rem* and is in effect that all parties moving for a new trial excepted to the ruling of the court. It seems to the writer of this opinion that this rule is highly technical, to say the least, and serves more to confound than otherwise and should be abrogated entirely. If all persons against whom a verdict has been returned file a motion for a new trial assigning the same causes therefor, either jointly or severally, and a ruling is had and exceptions taken by all parties against whom the ruling is made, either jointly or severally, the question is presented to this court on an assignment of errors, whether made by one or all of the parties excepting to such ruling, either in a joint or a separate assignment.

The questions presented by the assignment of errors, relate to the giving of instructions, the refusal to give instructions tendered by appellants, and the rulings on the admission of evidence.

The first instruction complained of is instruction No. 2 given by the court on its own motion. This instruction is as follows: "No evidence having been offered to the jury on the question of whether or not the alleged will was executed under duress, or that it was obtained by fraud, I instruct you that upon those two issues made by the pleadings, your finding should be for the proponents or defendants. Therefore the only remaining issues for you to determine are, was the alleged will duly executed, and was the said Samuels a person of sound mind at the time, or was he unduly influenced to execute the same."

The court in the trial of this case held, and rightfully we think, that the burden of proof was upon the proponents of the will and not on plaintiffs (appellants) and gave the proponents and defendants (appellees) the opening and closing of the evidence and argument.

Appellees, having the burden, should have established at least a *prima facie* case by showing by some evidence all the essential facts necessary to the validity of the will in question. Of the questions put in issue by the objections to the probate of the will were the following: (1) That said pretended will was executed under duress; (2) that said pretended will was obtained by fraud. On the issues thus formed the burden was imposed upon appellees to produce some evidence—at least enough to make out a *prima facie* case—before they were entitled to have the will admitted to probate, even though there had been no evidence to the contrary on the part of appellants. This instruction had the effect of telling the jury that the burden had shifted to appellants on those issues.

Whoever asserts a right dependent for its existence upon a negative must establish the truth of the negative by a preponderance of the evidence. *Steinkuehler* v. *Wempner* (1907), 169 Ind. 154, and cases cited on page 160, 81 N. E. 482, 15 L. R. A. (N. S.) 673. It is true that the latter clause of instruction No. 2 and other instructions told the jury that the burden was on appellees to establish by a preponderance of the evidence that the will was not unduly executed and that testator was not unduly influenced to execute the same. But this does not cure the error committed in giving the erroneous instruction. The only manner in which the court may obviate the error in giving an improper instruction is to withdraw the erroneous instruction. If by an instruction the burden of proof is placed on the wrong party the judgment will be reversed. *Hunt* v. *Osborn* (1907), 40 Ind. App. 646, 82 N. E. 933; *Holliday & Wyon Co.* v. *O'Donnell* (1913), 54 Ind. App. 95, and cases cited on page 104, 101 N. E. 642; *Evansville, etc., R. Co.* v. *Hoffman* (1914), 56 Ind. App. 530, 536, 105 N. E. 788;

*Roller* v. *Kling* (1897), 150 Ind. 159, 49 N. E. 948; *Chicago, etc., R. Co.* v. *Glover* (1899), 154 Ind. 584, 57 N. E. 244. Instruction No. 4 is erroneous for the same reason. It, too, tells the jury that the burden is on plaintiffs, appellants.

Appellants contend that instruction No. 17 was erroneous for the reason that it confines the undue influence, if any, to appellees, defendants. The part complained of is as follows: "So in this case if you find that at the time John Samuels signed the alleged will, he was not under the influence of the defendants in this action or either of them to the extent and in the way and manner herein stated, then such will would not be void on the grounds of undue influence."

7.

As was said in *Barr* v. *Sumner* (1915), 183 Ind. 402, 419, 107 N. E. 675, 681: "While undue influence is generally exerted by the beneficiary, yet a will may be invalidated because of undue influence of which the beneficiary was ignorant," citing Page on Wills, §129; and we are of the opinion that the instruction was erroneous in limiting the undue influence to defendants, appellees.

Appellants complain that the court erred in refusing to give their instruction No. 25. This instruction reads as follows: "Certain evidence has been admitted herein in regard to statements alleged to have been made by some of the plaintiffs in this cause to the effect that they expected to get, or intended to get, a share of the land heretofore deeded by John Samuels to his son, John McKinley Samuels. If you find that such statements were in fact made, you may consider them only on the question of the interest, or credibility of such plaintiffs when testifying in this case, and cannot be considered by you as evidence on any issue of unsoundness of mind of the testator, nor upon

8.

the question of the presence or absence of undue influence in the execution of the alleged will of John Samuels, nor upon the question as to whether the instrument in suit was duly executed as the last will and testament of John Samuels; nor can it be considered in connection with the said deed for the purpose of determining the validity or lack of validity thereof, for the reason that the validity of such deed is not in issue here, and the result in this case will in no way affect the validity of such deed."

There was introduced in evidence, over the objections of appellants, the testimony of the county recorder of Tipton county—a conversation with one of the appellants in relation to securing from him, the recorder, a certified copy of a certain deed made by the testator prior to the time of making the will in question—which was allowed to remain in the record, notwithstanding appellants' motion to strike it out. While it is doubtful whether such testimony was competent for any purpose, appellees evidently offered it to show the interest of the party as a witness, and it should have been confined to that object, and the instruction should have been given. The testimony certainly had no bearing on the sanity of testator, nor did it relate to any issue tendered by the pleadings, and was not in contradiction of any statement made by the witness while testifying in this case. But having admitted it for the purpose of showing the interest of the witness, it should have been limited to that purpose, which the instruction tendered would have done.

In the trial of the cause one Joseph Townsend was offered as a witness and testified that he had known the decedent for thirty years and related some conversations he had had with him. He stated, as his opinion, that decedent was not of sound mind all of the time. On cross-examination he was also

asked, over the objections of appellants, the following question: "Did you not go to the home of Susan and Benjamin Lawhorn in Tipton, Indiana, on or about the 21st of February 1914, and state to the son Benjamin Lawhorn in the wood shed 'I would like to know what you folks think about the Samuels case,' and then and there further state to him, that if your mother will swear that John Samuels was of unsound mind I will see that she gets $25.00 out of it, or words to that effect." This question was answered in the negative. Appellees in rebuttal called Benjamin Lawhorn and offered to show that such conversation took place between the witness and Townsend. Proper objections were made to this question, which were overruled; and the witness was allowed to state that such a conversation was had with Townsend. This was error; for in this State the rule is well established that a witness can only be impeached by proof of statements made out of court contrary to the testimony of the witness, when such testimony relates to a material matter in issue. *Pape* v. *Lathrop* (1897), 18 Ind. App. 633, and cases cited on page 650, 46 N. E. 154; *Miller* v. *State* (1910), 174 Ind. 255, and cases cited on page 261, 91 N. E. 930. "The court may in its discretion permit a witness on cross-examination * * * to be interrogated as to specific, extraneous offenses and conduct calculated to degrade him, and thus impair his credibility as a witness. But in every such case the party propounding the interrogatory is bound by the answer the witness gives, and will not be permitted to introduce substantive evidence to contradict it." *Dunn* v. *State* (1903), 162 Ind. 174, 182, 70 N. E. 521, 524; *Rock* v. *State* (1916), 185 Ind. 51, 110 N. E. 212, 213.

On the trial of this cause appellees offered in evidence a written instrument which in effect was an elec-

tion of the widow and appellee Mary Samuels to take under the law and not under the will sought to be probated. This election was prepared and signed by such widow after the complaint in this case was filed. This was objected to by appellants, and over such objections was read to the jury. Appellants insist that this was error, in that it gave appellees the right to argue to the jury that appellee Mary Samuels had exercised no improper influence over the testator in making the will.

We are of the opinion that this instrument had no proper place in the evidence, for the reason that no election is authorized to be made until after the will is admitted to probate. Section 3025 Burns 1914, Acts 1891 p. 404, provides as to personal property that the widow may within ninety days *after* the probate of a will elect to take under the will instead of the law. Section 3043 Burns 1914, Acts 1885 p. 239, provides that the widow may within *one year after* the probate of a will elect to take under the law rather than the provision of the will. Any election made prior to the probate of the will could have no bearing on the validity of the will and hence had no force in supporting it.

Sarah Magnet, one of the appellants, was a witness in this cause. On cross-examination she was asked as to a certain prosecution against her which she admitted. Appellees introduced in rebuttal the records of the Tipton Circuit Court, which showed the return of an indictment against her and her husband (who was not a party to this action), a trial by jury, a verdict and a motion for a new trial on the part of this witness which was granted, and a dismissal of the case by the State. No final judgment was rendered against her. This record should not have been introduced. What we have heretofore said about

the introduction of collateral matters in evidence is applicable here.

For the errors herein enumerated, the judgment is reversed, with instructions to the court to grant appellants' motion for a new trial.

NOTE.—Reported in 114 N. E. 977. Wills, actions to contest, burden of proof, 17 L. R. A. 494; 36 L. R. A. 724, 733; Ann. Cas. 1914 C 535. Witnesses: impeachment of, (a) by contradicting collateral and immaterial testimony given on direct examination, 6 Ann. Cas. 715, 40 Cyc 2493, (b) by showing that witness has been indicted, 16 Ann. Cas. 872. Effect of the death of judgment plaintiff on time to appeal, 7 Ann. Cas, 393. See under (5) 38 Cyc 1787; (8) 38 Cyc 1756; (9) 40 Cyc 2770.