ELLIOTT *v.* KERN, RECEIVER, ET AL.

[No. 12,885.   Filed March 15, 1928.   Rehearing denied and petition struck from files June 21, 1928.   Transfer denied and motion to strike out sustained December 10, 1929.]

454

*Walker & Hollett* and *Victor R. Jose, Jr.,* for appellant.
*Charles Remster, Henry H. Hornbrook, Albert P. Smith, Paul Y. Davis, Kurt F. Pantzer* and *Eugene H. Iglehart,* for appellee.

NICHOLS, J.—The receiver of the Pioneer Realty Company filed a petition to sell real estate in which, in part,

he recommended the distribution, after the payment of the debts and expenses, to the holders of alleged first preferred stock. Prior to the sale, appellant intervened to prevent the sale and order of distribution.

In due course, the sale was made, however, and later the court determined the rights of distributees, deciding against appellant. From the judgment rendered, this appeal, appellant presenting as error the court's conclusions of law.

It appears by the special findings that the Pioneer Realty Company is a corporation, duly organized July 7, 1920, under the laws of this state; that, by its articles of incorporation, it has an authorized capital stock of $225,000, divided into 2,250 shares of the par value of $100 each, of which stock the amount of $100,000 in par value is authorized to be common stock, and the amount of $125,000 in par value is authorized to be preferred stock; that it is further provided in said articles of incorporation that such preferred stock shall contain such terms and conditions and be sold at such prices as the board of directors of the corporation may authorize and approve; that, after the incorporation of said company, said corporation, by the lawful and proper action of its board of directors and officers, issued and sold to Breed, Elliott and Harrison, who are intervenors herein, 750 shares of its preferred stock, of the par value of $100 each, and duly issued certificates evidencing such stock ownership, in which certificates it is provided, *inter alia*, that in the event of liquidation, the holders of the preferred stock shall be entitled to receive from the assets of the company the par amount of the preferred stock, plus all accumulated dividends, before any sum whatever is paid to or set aside for the benefit of the holders of the common stock; that, of the preferred stock so issued and sold, there are now outstanding 600 shares of the par value of $100 each, upon which no dividends have been

paid since October, 1924, of which 600 shares outstanding, the firm of Breed, Elliott and Harrison is the owner of 75 shares of the total par value of $7,500; that, on January 23, 1923, at a time when there was outstanding $65,000 of the preferred stock issued and sold, the common stockholders of the company, in duly assembled meeting, unanimously adopted a resolution, in substance, that: Whereas, by the articles of association, the common capital stock is fixed at $100,000 and the authorized preferred stock is fixed at not more than $125,000, or $225,000 in all, and all of said $100,000 of common stock has been issued and is outstanding, and $75,000 of first preferred stock has been issued, and $65,000 thereof is outstanding, $10,000 thereof having been redeemed by the company agreeably to the provisions of the stock certificates, and no stock, common or preferred, except as above stated, has at any time been issued, and within the authorization of the company's articles of association and without violating any agreement between the company and its first preferred stockholders, the company can now issue and sell second preferred stock, which shall in all respects be junior and subordinate to the said outstanding first preferred stock, at least up to the amount of $50,000 of second preferred stock, therefore, the stockholders authorize the board of directors to take such action as may be necessary or proper to issue and sell second preferred stock to the amount, at par, of $50,000, the same, as to payment or redemption of principal and as to payment of dividends, to be junior and subordinate to the company's first preferred stock.

It is stipulated in each of the certificates of the second preferred stock that, in the event of liquidation, the holders of the first preferred stock shall be entitled to receive from the assets of the company the par amount of their first preferred stock, plus all accumulated dividends, before the holder of any shares of second pre-

ferred stock shall be paid any sum from such assets, but, in such event, the holders of second preferred stock shall, out of the remaining assets of the company, be entitled to receive the par value of their second preferred stock, plus all accumulated dividends, before any sum whatever shall be paid to or set aside for the benefit of the holder of any shares of the common stock of the company; that thereafter, on or about March 17, 1923, the officers of the company sold to one E. C. Kriel 70 shares of the second preferred stock, and issued to him therefor a stock certificate containing the provision as to the priority of the first preferred stock, and that thereafter, on or about March 20, 1923, said Kriel sold said 70 shares of stock to appellant, and the certificate so issued to Kriel was surrendered to the company and a new certificate with like provisions was issued and delivered to appellant; that there were issued, and are now outstanding, 500 shares of second preferred stock, issued and sold under the resolutions passed by the stockholders and directors of the company January 25, 1923, the stock certificates being in all respects identical with the certificates issued to said Kriel and to appellant, except as to names, dates and amounts; that no dividends have been paid on any of said 500 shares since October 11, 1924; that, at the time appellant received the certificate of stock from Kriel, he paid $6,650 therefor; that the company did not secure any permission from the Indiana State Securities Commission for authority to issue such second preferred stock, as set out in the resolution of January 25, 1923, nor did it file any proceedings nor take any action to increase its capital stock, nor file any papers or proceedings with reference to its second preferred stock issue, either in the office of the Secretary of State or in the office of the Indiana State Securities Commission; that Kreil was, at the time he sold said certificate of stock to appellant, in the

employ of Breed, Elliott and Harrison; that the transaction between Kriel and appellant was the individual business of Kriel and was without the knowledge, consent or acquiescence of Breed, Elliott and Harrison, which firm took no part in the proceedings wherein the officers, stockholders and directors of the company authorized the second preferred stock issue on January 25, 1923.

On these findings, the court stated conclusions of law: That the law is with the intervening petitioner, Breed, Elliott and Harrison, and the holders of preferred stock issued and sold July 7, 1920, being the first preferred stock, and that the holders are entitled to be paid *pro rata* the par amount thereof, with all accumulated and unpaid dividends before any distribution whatever is made to appellant, or any other persons holding preferred stock issued and sold pursuant to the said resolutions of January 25, 1923, being the second preferred stock.

Appellant presents no question by its motion for a new trial and the court's ruling thereon that is not presented by the court's alleged error in its conclusions of law. We, therefore, need consider only errors of the court in stating its conclusions of law upon its findings of fact. In oral argument, appellant presented at length his interpretation of evidence drawing his conclusions therefrom as to what was proved, but we can give no consideration whatever to such interpretations by appellant. In determining whether there was error in the conclusions of law as stated by the court, we are confined exclusively to the findings of fact. From these findings, it is clear that appellant purchased his stock here involved from Kriel, and that Kriel, not appellant, purchased the stock from the corporation. If, then, any fraud was committed on the part of the corporation, it was committed against Kriel and not against appellant;

and Kriel, not appellant, had such right of action as existed, if any, against the corporation. Such right of action did not pass from Kriel to appellant with the purchase of stock by appellant. *Huston* v. *Ohio, etc., Smelting Co.* (1917), 63 Colo. 152, 165 Pac. 251; *Fox* v. *Hirschfeld* (1913), 142 N. Y. Supp. 261; *Steele* v. *Brazier* (1909), 139 Mo. App. 319, 123 S. W. 477; *Kenedy* v. *Benson* (1893), 54 Fed. 836. In the Huston case the court, quoting from 1 Cook, Corporation (6th ed.) §355, says: "A sale of stock does not transfer a right of action for damages caused by false representations made to the vendor by the party from whom the vendor purchased." In the instant case it is appellant's contention that the stock which he purchased from Kriel was void because of the failure of the corporation to comply with the securities act hereinafter mentioned. If such were the fact, appellant's right of action was against Kriel, and appellant did not, by reason of his purchase from Kriel, become a creditor of the company. The court has expressly found that Kriel was acting for himself, and that he did not represent the intervening petitioner, the firm of Breed, Elliott and Harrison.

It is expressly provided in appellant's certificate of stock that, in the event of liquidation, the holders of the first preferred stock shall be entitled to receive from the assets of the company the par amount of their first preferred stock, plus all accumulated dividends, before the holder of any shares of second preferred stock shall be paid any sum out of such assets. With this certificate in his hands, clearly reciting that it represents second preferred stock, appellant contends that he should be given priority with the first preferred stock, for the reason, as he claims, the company could only issue first preferred stock. It appears by the articles of incorporation that the company was fully authorized to issue $125,000 of preferred stock, and

appellant contends that, having issued the $75,000 of stock, the company had lost its power to change the terms and conditions upon which it should issue the remainder. But the statute (§4994 Burns 1926) expressly empowers the stockholders, either when the stock is created or at any subsequent meeting, to authorize the issue and sale of preferred stock "upon such terms and conditions as such board of directors may deem best or as such company may prescribe." There is no provision in the statute which requires all of this stock to be issued at the same time, nor that the shares shall have equal rights, nor is there any limitation, here involved, as to the terms and conditions which may be prescribed. We hold that the company, having issued $75,000 of first preferred stock, did not thereby exhaust its power so that it was precluded from thereafter issuing the remaining $50,000 of stock as "second preferred" upon the terms and conditions prescribed by its board of directors.

Finally, appellant contends that because no authority for the issuance of the $50,000 of second preferred stock was obtained from the Securities Commission, such issue was therefore void, that the certificate of stock which he held, therefore, was void, and that he has a right to rescind the sale and occupy a position of a creditor of the company, thereby having priority in the payment of his claim over the holders of the first preferred stock. It was provided by what was commonly known as the "Blue Sky Law" of 1920 (Acts 1920 [Spec. Sess.] §11), as amended in 1921 (§4359c1 Burns' Supp. 1921), that: "The provisions of this act shall not apply . . . to the sale of securities of any corporation organized under the laws of the State of Indiana, or to the sale of securities of any corporation organized under the laws of any other state having in excess of seventy-five per cent of its assets situate or within the State of Indiana, which securities

as aforesaid were authorized prior to August 1, 1920, and which corporation has been selling such securities so issued." The $50,000 of second preferred stock, being a part of the $125,000 of preferred stock authorized in the articles of incorporation, was, therefore, so authorized before August 1, 1920, and the company, before that day, had been selling these securities theretofore authorized which had at that time been so issued. It was not, then, under the provisions of the statute, required to make application to the Securities Commission before it could lawfully sell the $50,000 of second preferred stock, which had been authorized before the Securities Act was passed. The court did not err in its conclusions of law.

Judgment affirmed.

McMahan, J., not participating.

### On Motion to Strike Out.

Myers, J.—A petition to transfer the above entitled cause to the Supreme Court shows that on March 15, 1928, the Appellate Court affirmed a judgment of the probate court of Marion county against Robert Elliott, sole appellant on appeal; that thereafter, on April 22, 1928, appellant Robert Elliott died; that on May 14, 1928, the attorneys of record, who had represented decedent in his lifetime in the prosecution of his appeal in the Appellate Court, filed therein a petition for a rehearing in the name of the decedent. A motion by appellees to strike the petition for a rehearing from the files for want of a party in interest as a petitioner was sustained by the Appellate Court, and that ruling is the basis for the petition to transfer the cause to the Supreme Court.

The petition to transfer asks this court to take jurisdiction of a cause wherein it is made to appear that the party in whose interest the petition is filed died prior to the filing of the petition.

Conceding that the attorneys who filed the petition here in question represented the decedent in his lifetime in this particular cause, the death of the party so represented would end the power of such attorneys to act further in the matter. *Harness* v. *State, ex rel.* (1877), 57 Ind. 1, 5; *Rundles* v. *Jones* (1851), 3 Ind. 35, 38.

The facts brought to our attention indicate that the action might have been revived by substitution notwithstanding the death of Elliott prior to the filing of the present petition to transfer, but, as no substitution was had, we hold that the petition filed in the name of the dead party is a nullity, and hence subject to the motion to strike it out. *Branham* v. *Johnson* (1878), 62 Ind. 259; *Taylor* v. *Elliott* (1876), 52 Ind. 588; *Taylor* v. *Elliott* (1876), 53 Ind. 441; *Moore* v. *Slack* (1894), 140 Ind. 38, 39 N. E. 237; *Bruiletts Creek Coal Co.* v. *Pomatto* (1909), 172 Ind. 288, 88 N. E. 606; *Ehlers* v. *Hartman* (1906), 37 Ind. App. 617, 77 N. E. 745.

Motion to strike out is sustained.