CLINTON v. ELDER
(No. 1537; 277 Pac. 968; May 28, 1929)
(Rehearing Denied Oct. 1, 1929)

For the appellant there was a brief by *J. M. Roushar* of Torrington and *Mothershead and York* of Scottsbluff, Nebr., and oral argument by *Mr. Roushar* and *Mr. York*.

For the respondent there was a brief by *John L. Sawyer* of Torrington, and *Kinkead and Pearson* of Cheyenne, and oral argument by *Mr. Kinkead.*

BLUME, Chief Justice.

This is an action for the cancellation of a tax deed. Judgment was entered in favor of the plaintiff and the defendants have appealed. The land involved in this case is the S½ SE¼ of Sec. 17, T. 23 N., R. 61 W. 6th P. M. This land was originally entered upon by Ray R. Thomas under the Reclamation Act of the United States of June 17, 1902 (32 St. at L. 388) and acts amendatory thereof and supplemental thereto. Subsequently the land, by

transfer, came into the possession of one Spir Thompson, who transferred the land in question, together with other lands, to Walter G. Leason, and the assignment from Thompson to Leason was accepted by the commissioner of the general land office on April 7, 1921. On December 21, 1921, Walter G. Leason and his wife executed a warranty deed to the land to Jennie Aldred Clinton, the plaintiff herein. This deed is in due form and was filed of record in Goshen County, Wyoming, on June 24, 1922, and was recorded in Book 41 of Deeds on page 221. No notice of this deed was, however, given to the local land office of the United States in accordance with the rules of the land department, which reads as follows:

"No assignment of a homestead entry or any part thereof shall be accepted by the commissioner of the general land office or recognized as valid for any purpose until after the filing in the local land office of the instrument required by paragraph 41."

According to Rule 42 of the "General Reclamation Circular" approved May 18, 1916, assignments such as mentioned above may be effected by quit claim or warranty deed. The lands involved herein are included within an irrigation district as authorized by the laws of the United States. 43 U. S. C. A., c. 13, Sec. 621 *et seq.* In 1924, they were assessed by the irrigation district in the name of W. G. Leason, instead of in the name of plaintiff, respondent herein. The assessment, or tax, not being paid, the land was sold on July 14, 1925, to the Goshen Irrigation District for the sum of $128.28 and the certificate of purchase was thereafter assigned to Norah Elder, who is no kin to William G. Elder, one of the appellants herein. On September 18, 1926, Norah Elder gave notice of her intention to apply for a tax deed pursuant to the sale above mentioned. The notice was served on September 22, 1926, by one Oscar White upon one Jake Bolger, the

person in possession and occupancy of the above described lands. During the trial of the case, White testified that he did not serve the notice upon Jake Bolger but upon the latter's son, in the road in front of the lands in controversy in this case. The testimony is uncontradicted. A tax deed was duly issued on January 20, 1927, by the treasurer of Goshen County, Wyoming, to Norah Elder, pursuant to the tax sale and the notice above mentioned. Thereafter, Norah Elder conveyed the land by quit-claim deed to William J. Elder, one of the defendants in this case, and notice of this conveyance was given to the United States Land Office at Cheyenne. Thereupon, and on July 19, 1927, the plaintiff herein commenced this action to cancel the tax deed, claiming that the same was invalid because the time for the application for a tax deed under the laws of this state had not expired; because the assessment was made in the name of W. G. Leason instead of in the name of the plaintiff; because the service made upon the occupant of the land is invalid, and because S. Everett Dennis, one of the appellants herein, agreed, as tenant of plaintiff, to pay the charges and assessments against the land involved herein for the year 1924; that, however, he failed to do so, and that William J. Elder, the other appellant herein, was in collusion with Dennis for the purpose of procuring a tax title to the land. This claim of respondent, plaintiff below, was denied in the answer, but it is unnecessary to refer to the allegations thereof in detail. The points raised therein shall, in so far as necessary, sufficiently appear hereafter.

1. It is the contention of the appellants that the courts of this state are without jurisdiction to hear and determine the issues herein. It is, in the first place, claimed that in view of the fact that the deed from Leason to the plaintiff herein was not filed in the United States Land Office in accordance with the rules and regulations of the Secretary of the Interior, it is wholly void. We think, however, that this regulation was made for the benefit of the United States and its land office, and that the defendants herein have no

right to question the validity of the deed above mentioned collaterally. The title conveyed was good, we think, against all the world except the United States and the question of no notice of the deed having been given to the Land Office cannot be raised by these defendants. That principle seems to be too clear for argument. McMillen v. Leonard *(Gerstle intervenes)*, 19 Colo. 98, 34 Pac. 681.

It is further contended that no right exists under the statutes of this state to bring this action, and that the only suits authorized in connection with lands, the title of which still stands in the United States, are suits for possession, provided for in Section 4676, Wyo. C. S. 1920, which reads as follows:

"Any person thus settled upon any of the lands of the United States, may maintain trespass *quare clausum fregit,* trespass, ejectment, forcible entry and detainer, unlawful detainer, or any proper action under the procedure of this state for possession, when wrongfully deprived thereof, or for the recovery or damages when the same have been suffered to such possession, occupation or enjoyment; and in any such action no plea or defense that the paramount title to such claim is in the United States shall be received or considered as a bar to the plaintiff's right of recovery."

This section gives to the possessor, to the settler on public lands of the United States, all possessory actions granted under the laws of this state, but it does not by its terms exclude actions proper under the laws of this state which, like the action in the case at bar, are designed to protect such possession indirectly. Possessory actions have been sustained in other jurisdictions in the absence of a statute similar in character to that above quoted. Fulmele v. Camp, 20 Colo. 495, 39 Pac. 407; Sproat v. Durland, 2 Okla. 24, 35 Pac. 682, 886; and the decision of the United States Supreme Court in the case of Gauthier v. Morrison, 232 U. S. 452, 34 Sup. Ct. 384, 58 L. Ed. 680, seems to be to the effect that, in the absence of an act of Congress prescribing the forum of such actions otherwise, it is the duty

of the state courts to permit them to be brought therein. Actions for possession have heretofore been the main actions arising in connection with lands of the United States settled on but not yet patented, but since the time that such lands may, under the laws of the United States, be included within irrigation districts under the laws of a state, other actions have necessarily come into being and must be settled by some tribunal. Counsel for the defendants have not suggested any tribunal except the United States Land Office, and they maintain that no other has jurisdiction. Section 621 of 43 U. S. C. A., c. 13, provides, among other things, that lands in an irrigation district such as the lands in controversy here, ''are hereby made and declared to be subject to all the provisions of the laws of the state in which such lands shall be situated relating to the organization, government and regulation of irrigation districts for the reclamation and irrigation of arid lands for agricultural purposes, to the same extent and in the same manner in which the lands of a like character held under private ownership are or may be subject to said laws.'' This would seem to indicate that actions arising in connection with irrigation districts shall be determined by the courts of the state in which the lands are situated, and would seem to include actions to cancel a tax deed issued under such laws. But whether it does or not, counsel have pointed out no statute of the United States, and we have found none, which has delegated to the Land Office of the United States the power and the right to settle controversies such as this. In fact, we can readily see that an act of Congress which would attempt to do so would be anomalous. In any event, in the absence of such specific provision, it would seem clear that the only tribunals empowered to deal with actions like that at bar would be the state courts in which the lands are situated. The Land Department, of course, adjudicates rights arising out of the homestead and other land laws of the United States, and questions in connection with the rules and regulations made pursuant thereto. But the

action at bar is one arising out of the laws of this state pertaining to irrigation districts, and does not, at least directly, arise out of any laws of the United States. No tribunals would be better qualified to deal with actions such as that at bar than the courts of the state. In Gauthier v. Morrison, supra, the United States Supreme Court said as follows:

"Generally speaking, it also is true that it is not a province of the courts to interfere with the land department in the administration of the public land laws and that they are to be deemed in process of administration until the proceedings for the acquisition of the title terminate in the issuance of a patent. But no interference with that department or usurpation of its functions was here sought or involved. It has not been vested with authority to redress or restrain trespasses upon possessory rights or to restore the possession to lawful claimants when wrongfully dispossessed. Congress has not prescribed the forum and mode in which such wrongs may be restrained and redressed, as doubtless it could, but has pursued the policy of permitting them to be dealt with in the local tribunals according to local modes of procedure and the exercise of this jurisdiction has been not only sanctioned by the Appellate Courts in many of the public-land states but also recognized and approved by this court."

That case, it is true, relates to possessory actions, but the principle deducible therefrom is, we think, that state courts have and should take, jurisdiction of all cases relating to public lands, settled upon but not yet patented, where the Congress of the United States has not delegated the power to settle such questions to another tribunal. In the case of Work, Secretary of the Interior v. Read, 57 App. D. C. 312, 23 Fed. (2d) 139, the court said:

"The adjustment of title disputes between conflicting claimants is a matter for the courts of the jurisdiction in which the land is situated."

In the case at bar, the title of the United States is not questioned by either party, nor are the laws of the United States involved herein. It is purely a question as to whether or not the laws of this state have been complied with in connection with the issuance of the tax deed in question here. And we think it is clear that the courts of this state have full right and power to settle that controversy. The objection to the jurisdiction must accordingly be overruled.

2. We need not go into all of the questions raised herein as to the validity of the tax title. It is sufficient to dispose of one. It is provided by Section 976, Wyo. C. S. 1920, relating to irrigation districts, as amended by Ch. 14, Session Laws 1923, that

"The procedure for the issuing of tax deed, including the form of the deed, time of publication and service of notice of intention to apply for deed shall be the same as is now or may hereafter be provided by law for the issuances of tax deeds by the county treasurer upon the sale of land for state and county taxes, except as herein modified."

The provisions of Sec. 2889, Wyo. C. S. 1920, relating to tax titles in general, are, accordingly, applicable. That section provides, among other things, as a condition for obtaining a tax title, as follows:

"Such purchaser or assignee shall serve or cause to be served a written or printed or partly written and partly printed notice of such purchase on every person in actual possession and occupancy of such land or lot and also the person in whose name the same was taxed or specially assessed," etc.

The undisputed evidence in this case shows the manner of the service upon the occupant, Jake Bolger. Oscar White, who served the notice, testified and his testimony is uncontradicted, that he did not serve the notice personally upon Bolger, but upon the son, in the road in front of the land in controversy. It is contended that an officer cannot

contradict the return which he has made, and that accordingly the testimony of White was incompetent to show that he served the notice on Bolger's son, instead of on Bolger, as shown by his return. The case does not, however, involve the return of any officer, and the rule invoked by counsel for the defendants does not apply. 32 Cyc. 516. The record does not even show whether White was an officer or not. Nor is it material whether he was or not. He made the service for and on behalf of Norah Elder, a private individual, and acted simply as her agent. She might have given the notice herself, but instead of doing so, employed White as her agent to do so in her behalf. He did not do so as an officer but as a private individual. And it seems to be well settled that where notice is required to be served, it means personal service, unless otherwise provided by statute. Chicago & A. R. Co. v. Smith, 78 Ill. 99; Haj v. American Bottle Co., 261 Ill. 362, 103 N. E. 1000, Ann. Cas. 1915A, 220; Clemmons v. State, 5 Ok. Cr. 119, 113 Pac. 238; Erickson v. Macy, 231 N. Y. 86, 131 N. E. 744, 16 A. L. R. 1322. In the case of Ellis v. Carpenter, 89 Ia. 521, 56 N. W. 678, a case involving the establishment of a highway, the court said:

"It will be observed that the service on C. D. Randall was not made upon him personally but by leaving a copy with his wife. The court below was of the opinion that said service was not sufficient. The statute does not authorize service in that manner. When service is required, it means personal service. There is no authority for adopting the substituted service provided for in the service of an original notice in that action."

The case of Gage v. Lyons, 138 Ill. 590, 28 N. E. 832, involves a tax title, just as in the case at bar. And the court said, in connection with the point under discussion, as follows:

"The statute required a notice of the tax purchase, etc., to be served on every person in the actual possession or occupancy of the lands or lots sold. Where the owner is not

an occupant himself of the land, it is to be presumed that the notice will be more likely to reach him, and he be apprised of the sale, when served upon all the occupants than if served only upon part. It is not, however, important that a reason should be given why a tenant, or tenants, in the actual occupation of the premises, or of some part of them, should be served with notice. It is enough that the statute requires it as a condition precedent to the right to have the tax deed issued. It does not appear that the service of the notice on the wife of Richard Cosgrove was intended as service upon him, but if it was, service of notice upon the wife of the tenant in possession is not sufficient to meet the requirements of the statute, which is imperative, and must be followed.''

And the United States Supreme Court, in the case of Gage v. Bani, 141 U. S. 344, 354, 12 Sup. Ct. 22, 26 (35 L. Ed. 776), in discussing substantially the question involved in this case, said:

''Nor do we attach any value to the affidavit of Westerfield, made July 15, 1879, as to the service on the 5th of December, 1878, because that service was upon Peter Caldwell, by handing the notice to his wife; and that is not stated to have been done in the presence of the husband.''

Similar in effect is the case of Ambrose v. Barber, 13 Ga. App. 788, 79 S. E. 1135, and see Cooley on Taxation (3rd Ed.) p. 1038, note.

In view of these authorities, and there are none cited to the contrary by counsel for the defendants, we are constrained to hold that the service upon Jake Bolger was not good, and vitiates the tax deed issued in this case.

3. The only remaining question, accordingly, is as to the contention that the plaintiff in this case should, to do equity, have tendered the amount due for the tax. This was not done, and counsel for the plaintiff say that they relied upon their contention that, as hereinbefore stated, Dennis agreed to pay the assessment in question for the year 1924, and that William J. Elder is bound by that

agreement, on the theory that they were in collusion. It is, however, in the first place, doubtful that this claim is sustained by the record. The answer admits that Dennis advanced the money to Wm. J. Elder to obtain the quit claim deed from Norah Elder, alleges that the money was repaid to him, and denies any collusion. There is no evidence on the point. Again, the plaintiff testified that Dennis agreed to lease the land for two, or perhaps three, years, and to pay the taxes for 1924 as part of the rental of the lands. Some time after the close of her testimony one of the counsel for the defendants made the following motion:

"I move to strike out the entire testimony of the witness Mrs. Clinton as to this oral arrangement which she has testified to as within the statutes of frauds of the state of Wyoming, absolutely void and of no effect. The statute expressly provides that any letting or leasing of real estate shall be void unless in writing."

The court took the motion under advisement. At the close of the case the following proceedings were had:

"Mr. Roushar: We renew our motions. By the court: I will sustain the motion as to the testimony with reference to the oral lease."

It is clear that the court meant to strike out the testimony as to the lease. The testimony as to the payment of the taxes was an integral part thereof, and we think that the court meant to strike that in connection with the remainder. The question of the repayment of the taxes must, accordingly, be considered independent of, and without reference to, the foregoing points. Counsel for the plaintiffs contend, as heretofore stated, that a tender of the amount should have been made. It was held in the case of Reed v. Tyler, 56 Ill. 288, that while a decree setting a tax deed aside as invalid should be made upon condition that the tax paid by the party claiming under the tax sale should be refunded, a statute which required the payment of the

redemption money as a condition precedent to the questioning of the validity of the tax deed was void. We do not, however, need to decide that point. It would be useless to reverse this case simply because no such tender was made. Plaintiff has judgment in her favor, and it would be idle ceremony to reverse the case merely to give her an opportunity to make such tender. The same result may be reached by affirming the case conditionally. It is said in 37 Cyc. 1520 that the defeated tax purchaser may have a lien adjudged to him for the tax which he has paid, and we think that that should be done in this case. See also Slocum v. Peterson, 131 Wash. 61, 229 Pac. 20, 40 A. L. R. 1071; Royal v. Goss, 154 Ala. 117, 45 So. 231.

The judgment of the trial court, accordingly, will be affirmed, except as herein modified, and the cause is remanded to the District Court with directions to fix a reasonable time within which the plaintiff in this case shall pay to the defendant Elder or in the office of the clerk of the District Court of Goshen County, Wyoming, for him, the amount necessary for redemption from the tax sale herein mentioned, including any subsequent tax, if any, paid by the tax purchaser, the court fixing and determining the amount, and further providing that upon such payment being made within the time so specified the judgment heretofore entered shall remain valid and in force, but to stand vacated in case of failure to do so.

*Conditionally Affirmed, Modified, and*
*Remanded with Directions.*

KIMBALL and RINER, JJ., concur.

BLUME, Chief Justice.

A petition for a rehearing has been filed herein by the respondent, complaining that this court erroneously modified the judgment herein, by requiring the repayment of the assessments involved in this case. Counsel in the original brief argued, and they lay considerable stress in their brief for rehearing, upon the point that inasmuch as Dennis was a tenant of the respondent, he was bound to protect his landlord and could acquire the tax title only for the latter's benefit. However that may be—and we need not decide that point—a tenant is not required to make a gift to his landlord, and hence that rule, if correct, would in no event permit the landlord to profit at the expense of the tenant. The tenant, or his assignee, would at least be entitled to repayment of the amount expended, unless he had expressly agreed, as part of the consideration of the lease, to pay the taxes or assessments. Counsel argue that the record shows that Dennis so agreed. The witness Matzke, it is true, testified that Dennis leased the land, but that is not sufficient, and we cannot agree with counsel that the statements of the appellants in their pleading amount to an admission of such agreement, or that such agreement may be fairly inferred, especially in view of the denial of such agreement contained in the answer, which could not well be more specific. Hence the argument of counsel, advanced throughout the brief, that the judgment on the point here under consideration was good at least as to Dennis cannot be upheld.

Counsel argue further that the trial court erroneously excluded the testimony of the respondent and that we should so hold, and, therefore, consider it. While we do not say that we would not under some circumstances consider excluded testimony without cross-appeal or assignment of error, we do not think that we can do as requested in this case, if for no other reason than that we should

not be called upon to determine the credibility of the testimony excluded, and this case is in that respect unlike that of Strever v. Sinclier, 66 Mont. 258, 213 Pac. 253. See 4 C. J. 679, Section 2581, for a general statement of the rule in like circumstances. We find nothing in Eads v. State, 17 Wyo. 490, 101 Pac. 946; Hilliard v. Douglas Oil Fields Co., 20 Wyo. 201, 122 Pac. 626, and Pardee v. Kuster, 15 Wyo. 368, 89 Pac. 572, 91 Pac. 836, that is inconsistent herewith. In view of our holding that in the absence of the excluded testimony there is not sufficient evidence to warrant the withholding of the repayment of such assessment, it is possible, though we do not decide the point, that, upon request, the case might have been sent back for a new trial. However, we could not well have adopted that course, since we were not asked to do so by counsel for respondent, but they, on the contrary, were anxious not to have the case tried anew, and asked us to modify the judgment instead, if we should deem modification necessary.

Counsel for respondent further argue that appellants cannot have any relief because they answered jointly, took exception to the judgment jointly, and have assigned error jointly; that either the one or the other has no interest in the case, and in the money directed to be repaid by this court; that accordingly the rule, relating to joint assignments and joint appeals, mentioned in Stein v. Schuneman, (Wyo.) 273 Pac. 543, and cases cited there, should be applied in this case. The point was argued on the original hearing, but we did not think the rule applicable, and the argument on petition for rehearing has not convinced us to the contrary. In order that an appellant should be cut off from relief by reason of the technical rule of procedure mentioned, it should be reasonably clear that the rule is applicable. But counsel for respondent themselves have thrown the greatest doubt on the point. The appellants were sued jointly, the peti-

tion in no way indicates that the interests of the appellants, then defendants, were other than joint, and a joint judgment was taken against them. Yet if one or the other of the appellants have now no interest in this appeal, or in the return of the money, as contended, that fact was as true when the petition was filed, and was as true during the whole course of the proceedings, as it is now, and nothing has taken place to change it. Again, counsel say that the defendant pleaded that Dennis paid the money to buy up the tax title, and that they did not produce any testimony that this money was, as further pleaded, repaid to Dennis by W. J. Elder; that the burden to show this was on the defendants, and counsel would apparently draw the conclusion that the record shows that Dennis is the only party that is interested in the return of the money—the only point left in the case. Conceding for the purposes of this opinion that the burden of proof was as contended, then the record shows that Dennis has some interest in having the assessment, paid for the benefit of the respondent, returned. But Elder holds the tax title, and we could not, under that state of the record, hold that Elder has no interest in it, however small that may be, and whether he received it as a gratuity or otherwise. In any event, the record is not at all clear to require us to apply the rule mentioned.

We see no reason for a rehearing, and the petition therefor must accordingly be denied.

*Rehearing Denied.*

KIMBALL and RINER, JJ., concur.