## BENEDICT, ET AL. v. CITIZENS NATIONAL BANK OF CASPER

(No. 1711; August 9, 1932; 13 Pac. (2d) 573)

For the plaintiffs in error there was a brief by *Messrs. Hagens & Wehrli,* of Casper, Wyoming, and oral argument by *Mr. William Wehrli.*

For the defendant in error there was a brief by *E. E. Enterline, Madge Enterline*, and *Casey & McNally*, all of Casper, Wyoming, and oral argument by *Mr. E. E. Enterline*.

468

BLUME, Justice.

This is a suit by the Citizens National Bank of Casper, Wyoming, against Stanley Benedict, Kathleen Dodson Benedict and Henry L. White, upon a note executed by Stanley Benedict and Kathleen Dodson Benedict to Henry L. White on November 10, 1922, for the principal sum of $6500, and due six months after date. The note was secured by a mortgage dated November 10, 1922, also executed by Stanley Benedict and Kathleen Dodson Benedict, on a portion of Block 58 in the City of Casper, particularly described in the mortgage. This note and mortgage were transferred and assigned to the Citizens National Bank on September 12, 1923, by Henry L. White by endorsing the note as follows: "Pay to the order of Citizens National Bank of Casper. (signed) Henry L. White," and also by endorsing the mortgage as follows: "This mortgage sold to the Citizens National Bank of Casper, September 12, 1923. (signed) Henry L. White."

The petition asks for judgment upon the note and costs and attorney fees. An answer was filed on behalf of the defendants setting up affirmative defenses, to which a reply was filed by the plaintiff. The case was tried to the court without a jury. Judgment was rendered for the plaintiff on October 21, 1930, for the full amount of the note and for foreclosure of the mortgage. Upon request, the court made finding of facts and conclusions of law. Separate motions for a new trial were filed by the Benedicts and by Henry L. White. These motions were overruled. Thereupon this case was brought to this court by petition in error.

1. The first contention herein is that the mortgage indebtedness involved herein was extinguished by reason of the merger of the equitable with the legal title. The evi-

dence in this case shows that C. H. Horstman, acting as trustee for the plaintiff bank, received, on December 15, 1922, a deed to the premises described in the mortage above mentioned. The consideration expressed therein is $1.00. It is claimed that this deed conveyed absolute title; that it was made subject to the mortgage made to Henry L. White above mentioned; that the mortgage was assumed by the bank, and that accordingly the note and the mortgage sued upon herein must be considered as merged in the absolute title of the bank, in accordance with the principle stated in 46 A. L. R. 329, that:

"Where the owner of the fee acquires a paramount mortgage, the payment of which he has theretofore assumed, equity will not keep the charge alive, whatever may be his intention or the form of the transfer of the mortgage to him."

The principle seems to have no application, if the deed was taken merely as security and was, in effect, a mortgage. The court found that there was no merger; that, on the contrary, the deed to the bank was simply taken as security. Counsel for defendants do not directly argue that the finding of the court is not sustained by the evidence, and counsel for the plaintiff accordingly insist that there is nothing for us to consider. Without passing on that point, we shall assume that the question whether or not there is substantial evidence to support the trial court's finding is sufficiently questioned by the indirect arguments made. Horstman, vice president of the plaintiff bank, testified that the deed was taken as security, and not as an absolute deed. The Benedicts, who were most vitally interested in this point and who, if anyone, should have known as to whether or not the contention herein was true, were not called as witnesses, and hence, in the absence of explanation, the presumption may well be indulged in that had they been called to testify, their

testimony would have been unfavorable to defendants on this point. Jones v. Wetlin, 39 Wyo. 331, 271 Pac. 217, 69 A. L. R. 840; Studebaker Corp. v. Hansen, 24 Wyo. 222, 250, 157 Pac. 582, 160 Pac. 336, Ann. Cas. 1917E, 557.

The deed made to the bank contains the following provisions:

"And the said parties of the first part, for their heirs, executors and administrators do covenant and agree to and with said party of the second part, his heirs, executors, administrators and assigns, that at the ensealing and delivering of these presents, they are well seized in said premises, in and of a good and indefeasible estate in fee simple. And that they are free from all incumbrances whatsoever, except mortgage for $6500.00 held by H. L. White and the taxes for the year 1922. And that they have good and lawful right to sell and convey the same, and that the said parties of the first part will and their heirs, executors, and administrators shall warrant and defend the same against all lawful claims and demands whatsoever."

Stress is laid by counsel for the defendants on the clause "except mortgage of $6500, held by H. L. White." In the subsequent clause, however, the grantors of the deed warrant and defend the title against all lawful claims and demands whatsoever, and we are not prepared to say that under these circumstances the foregoing "exception" indicates conclusively or otherwise the intention of the parties in making and accepting the instrument, that the bank should pay the mortgage. What this intention was seems to be indicated, aside from the testimony of Horstman, by memoranda made after the execution of the deed. One of these is dated February 13, 1923, and is signed by plaintiff bank, by Stanley Benedict, and by C. H. Horstman. This instrument, somewhat abbreviated, is as follows:

"Whereas Stanley Benedict did deed and set over to C. H. Horstman that portion of Block 58 of the City of Casper, Natrona County, Wyoming more particularly described as follows: (here the particular portion is described), which property was deeded to C. H. Horstman as collateral on a loan made to the said Benedict. Now for and in consideration of one dollar in hand paid the receipt of which is hereby acknowledged, the said C. H. Horstman hereby agrees to deed and set over to Stanley Benedict the above described property in the City of Casper, Wyoming, upon the said Stanley Benedict paying to the said C. H. Horstman the sum of $7000.00 on the indebtedness owing to the said C. H. Horstman by the said Stanley Benedict. It is further agreed that if the property is not sold within four months from this date, that the said C. H. Horstman shall have the right to sell the property for a reasonable price and apply the proceeds upon the account of C. H. Horstman or the Citizens National Bank, provided the above described property has not been redeemed as above set out."

On September 5, 1923, another instrument was executed by the plaintiff bank and by Stanley Benedict, which specifically refers to the agreement of February 13, 1923 already quoted above, and which recites, somewhat abbreviated:

"That whereas, a memorandum of agreement was entered into between the Citizens National Bank and C. H. Horstman with the said Stanley Benedict, dated the 13th day of February, 1923, which memorandum provides for the sale of certain real estate mentioned therein, and Whereas said real estate is now in the name of C. H. Horstman for the purposes mentioned in said memorandum of agreement, Therefore, it is agreed that the Citizens National Bank or Horstman may cause the said property to be sold and apply the proceeds, first, on the mortgage indebtedness of Henry L. White; second, on the costs of sale, and third, on the indebtedness due to the bank, to Horstman, and to one M. W. Purcell, and the balance, if any, to Stanley Benedict."

These memoranda, aside from the testimony and lack of testimony already mentioned, go far in establishing that the deed to Horstman was taken merely as security and was, in effect, a mortgage, for they unequivocally recognize an interest of the Benedicts in the property long after the execution of the deed. Furthermore, there is no evidence that any price was agreed on, or paid, at the time of the execution of the deed. Counsel for the defendants contend that the following facts show that the deed was absolute: (1) On December 3rd, 1923, Horstman conveyed the premises by warranty deed to J. R. Schlueter, trustee. The deed does not mention the mortgage, and it is, accordingly, argued that this indicates that the bank originally bought the property subject thereto. Not a great deal of importance, however, can be attached to this, in view of the fact that Schlueter was but a trustee for the bank the same as Horstman, and was, by this deed made merely the successor of the latter. (2) Robert White, son of Henry L. White, testified that Horstman told him that the bank would have to assume the White mortgage for its own protection. This testimony was, however, denied by Horstman, and the trial court evidently believed him. (3) It is pointed out that in the memorandum of September 5, 1923, it was agreed that the mortgage indebtedness of White should be paid first out of money received from a sale of the property. But this is of no importance. The mortgage was a prior lien, and hence the agreement mentioned would naturally require that to be paid first. (4) It is also pointed out that the assignment of the White mortgage to the bank was never recorded. We fail to see how that proves the contention of the defendants. The assignment was not made in the form so that it could be recorded under the laws of this state. If the bank had an absolute deed to the property, it would probably have been more careful to have protected its title. Our conclusion is that the finding of the trial court that there was no

merger is amply sustained by the evidence, and we are inclined to think that it could not well have found otherwise.

2. Two other points are urged in the brief of counsel, namely, that since Henry L. White endorsed the note after its maturity, it was thereafter, as to him, payable on demand; that no demand was made upon the Benedicts within a reasonable time as required by the Negotiable Instruments Law; further, that no notice of dishonor was sent to White, or if such notice was sent, it was not sent in time, and that accordingly the latter is wholly discharged as endorser. While counsel for the bank claim that the law in these respects has been fully complied with, they further urge that we cannot consider these contentions, for the reason that the assignments of error in connection therewith are made jointly by the defendants, plaintiffs in error here; that these assignments of error are not valid so far as the Benedicts are concerned, and hence must also fail insofar as White is concerned.

The petition in error begins by stating (somewhat abbreviated):

"Come now Stanley Benedict and Kathleen Dodson Benedict and Henry L. White and appeal from the judgment of the court of October 21, 1930; that Stanley Benedict and Kathleen Dodson Benedict appeal from the order of the court overruling and denying their separate motion for a new trial; that plaintiff in error Henry L. White appeals from the order of the court overruling and denying his separate motion for a new trial."

Thus far the petition in error has no bearing upon the point now under consideration. The statement of the Benedicts that they appeal from the order overruling their separate motion for a new trial, and the statement of White that he appeals from the order overruling his separate motion for a new trial, do not relate to assignments

of error. The petition in error then proceeds (abbreviating the immaterial parts) :

"And the said plaintiffs in error" do hereby appeal from said judgment and said order denying the motion for a new trial of Stanley Benedict and Kathleen Dodson Benedict and of Henry L. White, "and do hereby allege and state that the said District Court of the eighth judicial district in and for Natrona County did commit manifest error in said cause as follows:"

Here follow the specifications of error alleging that the court erred, first, in its findings of facts and conclusions of law, and in rendering its judgment; second, in overruling the motion for a new trial of the Benedicts; third, in overruling the motion for a new trial of White; fourth, in refusing to find the facts and the conclusions of law requested by the plaintiffs in error, and fifth, in various matters already embraced in the previous assignments of error. The prayer is as follows (leaving out immaterial matters) :

"Wherefore your petitioners respectfully pray: That the judgment made and entered in said cause October 21st, 1930 by said District Court be reversed. That the order of December 11th, 1930, overruling and denying the separate motions for new trial of the Benedicts and of White be wholly vacated and set aside and that an order be made and entered herein granting a new trial to these petitioners."

We see no escape from the conclusion that the assignment of errors herein is joint. It commences by saying: "And the said plaintiffs in error * * * do hereby allege," etc. Clearly such statement is joint, since the Benedicts and White are all plaintiffs in error. This is emphasized by the prayer which asks for joint relief. The situation here is just about the same as in Greenawalt v.

Improvement Co., 16 Wyo. 226, 92 Pac. 1008, where the prayer for relief was joint, and in which it was alleged:

"The said plaintiffs in error claim that there is manifest error in the record and proceedings of said court filed herein and made part hereof" (followed by the specifications of error).

Counsel for plaintiffs in error have cited us to Clinton v. Elder, 40 Wyo. 350, 277 Pac. 968, 280 Pac. 889, upon rehearing, and the case of Johnson v. Samuels, 186 Ind. 56, 114 N. E. 977, 979. In Clinton v. Elder all the parties joining in the assignment of error were interested in the reversal of the identical point urged upon review, or at least the point was doubtful, and hence we refused to hold the joint assignment defective. In the case of Johnson v. Samuels, the court said:

"While this court has in some cases held that such an assignment, namely, one that was joint, presents no question for our consideration, we are of the opinion that such holdings were not intended to apply to a case such as this one, where the ruling affects all alike."

In the case at bar, however, the plaintiffs in error are not affected alike. The Benedicts cannot complain of the fact that the court held White liable as an endorser. They are not interested in the error committed by the court in overruling the motion for a new trial of White, nor is White interested in the ruling of the court on the motion for a new trial of the Benedicts. The only point in which all the plaintiffs in error were alike interested is that of merger above mentioned, and the contention in that regard not being well taken, as we hold, there are no points in which the Benedicts and White are jointly interested. And the rule has long been established in this state that if a joint assignment of error is bad as to one, it is bad

as to all. Greenawalt v. Improvement Company, supra. The rule was again applied and discussed in Stein v. Schuneman, 39 Wyo. 476, 273 Pac. 543. We are, accordingly, constrained to hold that the assignments of error as to demand and notice of dishonor must be overruled.

The writer of the opinion in Johnson v. Samuels, supra, expressed the belief that the rule here mentioned should be abolished. The time may come when that will be done, since there are grounds for saying that it is technical. It may, however, be added, that the strict application in the case at bar of the rule of demand and notice of dishonor, for which the petitioners in error contend herein, while doubtless of great importance in some cases, also would seem, under the facts of this case, to be technical in character. And while that is no ground for refusing to apply it, it would seem to deprive us of the reason for refusing to apply the rule first mentioned, when clearly required under the previous decisions of this court, of which counsel must be held to have had notice.

No other points are discussed in the brief, and it follows, accordingly, that the judgment of the trial court must be affirmed.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.