419 So.2d 125 (1982)
Susan E. BRAXTON, as Provisional Tutrix of the Minor Children, Brandy Elizabeth Braxton and Floyd Eugene Braxton, II, Plaintiff-Appellant,
v.
GEORGIA-PACIFIC CORPORATION, et al., Defendant-Appellee.
No. 14955.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1982.
Rehearing Denied September 24, 1982.
*126 Nelson, Hammons & Johnson by John L. Hammons, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Alex F. Smith, Jr., Shreveport, for defendant-appellee.
Before PRICE, HALL and SEXTON, JJ.
SEXTON, Judge.
This is a wrongful death action for fatal injuries incurred by Floyd Eugene Braxton as a result of an industrial accident. Plaintiff, Susan E. Braxton, filed the action as provisional tutrix on behalf of decedent's minor children, Brandy Elizabeth Braxton and Floyd Eugene Braxton, II. The original defendants named in the suit were decedent's employer, Georgia-Pacific Corporation, various employees of the corporation, Southwestern Electric Power Company, and Walter Kidde Company, Inc., manufacturer of the Grove hydraulic crane.
Georgia-Pacific Corporation, the corporation employees, and Southwestern Electric Power Company were subsequently dismissed from the litigation. Walter Kidde Company, Inc., was the only defendant remaining at trial.
After a trial on the merits, the district court in its written opinion found that plaintiff failed to establish negligence or fault on the part of the defendant. Plaintiff appeals from the judgment rendered in *127 favor of defendant, Walter Kidde Company, Inc. We affirm the judgment of the trial court for the following reasons.
On November 7, 1977, Floyd Eugene Braxton was employed as a "rod-buster" by Georgia-Pacific Corporation at its plant near Logansport, Louisiana. At approximately 7:15 a.m., Braxton and a co-worker, Steve Hughes, were assisting another co-worker, Pete Ware, in moving a bundle of steel rebars from one area of the construction site to another. Pete Ware was operating a Grove RT62-50 mobile crane manufactured by the defendant, Walter Kidde Company, Inc. The boom of the crane was extended and the load line was tied to the bundle of rebars. While the crane was in motion, Braxton and Hughes were walking on the ground holding onto the steel rebars to guide and balance the load. As the crane proceeded along the service road, either the load line or the boom of the crane came in contact with a high voltage energized electrical line. Upon contact with the line, the rebars became energized electrocuting Braxton.
At trial, plaintiff alleged that the crane was unreasonably dangerous due to the failure of defendant to incorporate three safety devicesa boom shield, an insulated link and a proximity warning devicein the design and manufacture of the crane. Plaintiff further alleged that the defendant was negligent for failing to advise Georgia-Pacific Corporation of the availability of these safety devices for inclusion on the crane. Plaintiff also contended that defendant was negligent in failing to provide adequate warnings of the known serious danger of potential contact between the crane boom and overhead energized powerlines. Defendant contended that the crane was not unreasonably dangerous in normal use without the safety devices since the devices are unreliable; because of the unreliability of these devices, defendant was not negligent in failing to inform purchasers of their availability. Finally, defendant asserted that adequate warnings were made even though the danger was obvious.
On appeal, the following issues are presented:
(1) Whether the Grove mobile crane was unreasonably dangerous for normal use due to the failure of defendant to incorporate the safety devices in the design and manufacture of the crane;
(2) Whether defendant was negligent in failing to advise Georgia-Pacific Corporation of the availability of the safety devices; and
(3) Whether defendant was negligent in failing to provide adequate warnings of the known serious dangers of potential contact between the crane boom and overhead energized powerlines.
It is well settled that:
"A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect."
Weber v. Fidelity & Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754, 755 (1971). See also Foster v. Marshall, 341 So.2d 1354 (La.App. 2d Cir. 1977); DeBattista v. Argonaut-Southwest Insurance Company, 403 So.2d 26 (La.1981); Thornhill v. Black, Sivalls & Bryson, Inc., 394 So.2d 1189 (La.1981); and Byrd v. Hunt Tool Shipyards, Inc., 650 F.2d 44 (5th Cir. 1981).
"If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for the manufacturer is presumed to know of the vices in the things he makes, whether or not he has actual knowledge of them." Weber, supra, 250 So.2d at p. 756.
An unusual occurrence alone should not be proof of a defect in the product. See Canty v. Terrebonne Parish Police Jury, 397 *128 So.2d 1370 (La.App. 1st Cir. 1981). Rather the general rule is that:
"A product is unreasonably dangerous when it is dangerous to an extent beyond that which would be contemplated by an ordinary consumer or user."
Hebert v. Brazzell, 403 So.2d 1242, 1245 (La.1981) and citations therein.
Plaintiff contends that the crane was unreasonably dangerous without the inclusion of the safety devices. The safety devices are known as a boom shield, insulated link, and proximity warning device.
The boom shield is designed to prevent contact between the boom of the crane and an energized powerline by acting as a insulator. The boom shield is a metal framework attached to the very end of the boom with insulated connectors to insulate the shield from the boom. The boom shield is limited in that it only covers approximately fifteen feet of the boom. Upon contact of the upper end of the boom with a powerline, the boom cage acts as a buffer to prevent the boom from becoming energized. The evidence established that boom shields are primarily used for lattice boom cranes rather than for hydraulic cranes, such as existed in this case.
The insulating link acts as a hooking device at the point at which the load is attached to the cable. The links come in various sizes and capacities depending upon the type of load and electrical voltage. A portion of the link is made with plastic or a non-conducting material which must be kept absolutely clean from contaminates. The device is designed to prevent the load from becoming energized if the load line or the boom contacts a powerline. However, the line would not prevent the load from becoming energized if it was touching the body of the crane.
A proximity warning device is similar to a radio receiver and is designed to give a warning when the crane is near an energized powerline. An antenna would be placed on the boom to detect the electromagnetic field emanating from a powerline and an alarm would sound when the crane was a certain distance from a powerline. The device requires considerable adjustment and calibration to make it effective. An alarm device could be situated on the outside of the crane so that workmen on the ground would be alerted.
Testifying for plaintiff was Robert Newell, a professor in electrical engineering at Louisiana Tech University for twenty-four years before retiring. Mr. Newell testified that the accident could have been avoided by equipping the crane with one or more of the safety devices. The witness was of the opinion that the proximity warning device and insulated link were reliable. However, Mr. Newell had never been involved in the testing of these devices nor had any contact with any of the evidence.
Also testifying for plaintiff was Mr. C.D. Attaway, a safety consultant since 1969. Mr. Attaway had limited experience with the proximity warning device and insulated link while employed at the Thiokol Chemical Corporation and has had little exposure to cranes since 1969. Mr. Attaway had never been involved in the design of any type of machinery or the testing of these safety devices. The witness was of the opinion that the insulated link and proximity warning device were effective enough to warrant their use on cranes.
Plaintiff's third expert witness was Dr. Paul Hale, Professor of Industrial Engineering and Coordinator at Louisiana Tech University. Dr. Hale was of the opinion that a crane would be unreasonably dangerous in normal use without the insulated link and proximity warning device. However, Dr. Hale had never had contact with any of the safety devices and his knowledge of the devices was obtained from reading various literature.
Defendant offered three expert witnesses. Mr. William Renner, Director of Products Safety and Reliability at Grove Manufacturing (a division of defendant Kidde Company) since 1970, testified that the cranes manufactured by defendant were not equipped with the devices as they were not reliable. Mr. Renner was personally involved in testing of a proximity warning *129 device and concluded it was not sufficiently reliable to be incorporated in the design of the Grove crane. The device required considerable adjustments and failed to repeat the settings. For example, movement of the boom could upset the calibration and the alarm would fail to sound. Further, variables in the area of the powerlinesuch as a concrete truck driving into the vicinitycould interrupt the adjustment of the device. The cost of these devices did not influence the decision not to incorporate as it would be insignificant in comparison to the cost of the finished product. Mr. Renner testified that to be incorporated in a Grove product, a device must be at least ninety percent effective. Mr. Renner felt that his company would do a disservice by placing the devices on the crane since their presence would impel the workers to depend on these devices for protection rather than sound judgment.
Defendant's next expert witness was Mr. Bernard Enfield, a consulting engineer with Safety and Training Associates. Mr. Enfield has had considerable experience in the construction field and has personally been involved in the testing of the safety devices. Mr. Enfield testified that it was difficult to maintain the insulated link at a construction site as it is easily contaminated by mud, water, or other conducting materials, and the plastic coating on the link may become chipped and scratched. Further, the link is not susceptible to inspection for structural integrity. As to the proximity warning device, Mr. Enfield testified that the devices did not possess the quality of sustained effectiveness or repeatability. Variables such as electrical storms or trucks would affect the electromagnetic field for which the antenna is tuned. Even movement of the boom or a change in the length of the boom would interrupt the electromagnetic field, thus necessitating readjustment. The witness was of the opinion that the devices should not be used on cranes and would actually make a crane less safe by fostering a false sense of security in the workmen.
Defendant's third expert witness was Mr. Neal Smith, a professor of electrical engineering at Ohio State University since 1947. Mr. Smith had also been involved in the testing of these safety devices and testified that the devices were not sufficiently reliable for installation on the crane. Mr. Smith was also of the opinion that workers would develop a false sense of security if the devices were on the crane.
The testimony of the experts established that no pertinent safety regulations in the construction field required that the cranes be equipped with these safety devices as standard equipment. Further, the evidence was that currently no crane manufacturer incorporated these devices in their equipment.
The evidence is not conclusive that these devices could have prevented the accident as they are generally unreliable. Even if the devices had been on the crane and been in perfect working condition, the accident still may have occurred. If the bundle of rebars had been touching the body of the crane when it struck the powerline, the insulated link would not have prevented the load from becoming energized. Also, had the lower portion of the boom struck the powerline, the boom shield would not have prevented the boom from being energized.
In order to impose liability on the defendant, plaintiff must first prove that the product was defective. The trial judge held that plaintiff failed to meet this burden of proof.
It is well settled that the trial judge is not bound by expert testimony. Such testimony is to be weighed by the court the same as other evidence. The weight which is assigned to the testimony of an expert is ascertained by the qualifications and experience of the witness as well as the materials and circumstances upon which the expert's opinion is grounded. Gleason v. City of Shreveport, 393 So.2d 827 (La.App. 2d Cir. 1981) and citations therein. See also Trichel v. Louisiana State Highway Dept., 402 So.2d 784 (La.App. 3d Cir. 1981).
It is apparent that the trial judge assigned more weight to the testimony of *130 the defendant's expert witnesses than to the testimony by plaintiff's experts. Our review of the record does not reveal that the trial court committed manifest error in so doing.
Plaintiff alleges that defendant was negligent in failing to advise Georgia-Pacific Corporation, decedent's employer, of the availability of the safety devices.
As established by the evidence, the safety devices were considered to be unsafe and unreliable by the defendant as well as other experts in the field. This court is unaware of an affirmative duty on the part of a manufacturer to inform purchasers and consumers of the availability of a safety device which it finds to be unreliable after considerable testing. The finding of the trial court in this regard is not manifestly erroneous.
Plaintiff contends that the defendant was negligent in failing to give adequate warnings of the serious danger of contact between the boom of the crane and an energized overhead powerline.
The courts have held that:
"A manufacturer must give warning of any danger inherent in his product's normal use which is not within the knowledge of an ordinary user."
Hebert, supra, at p. 1245, and numerous citations therein. See also Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La. 1978). This duty is limited in that it
"... goes only to those dangers which are not obvious. A manufacturer is not compelled to warn knowledgeable purchasers of the dangers of which the buyer either knows or should be aware."
Foster, supra, at p. 1362, and citations therein. See also Byrd, supra.
The evidence at trial established that the crane did have a warning on the door of the crane alerting the operator to the hazard of electrocution. Although the warning is obscured when the door is latched open, there is no evidence as to whether the door was latched open or closed in the instant case. The Grove operators handbook, which by its own terms stipulates that it remain in the crane, contains several warnings as to the hazard of electrocution. The Grove service manual also contains similar warnings.
Further, the danger of electrocution upon contacting a powerline is an obvious danger of which the ordinary construction worker is aware or should know.
The trial court held that the defendant was not negligent in failing to give adequate warning. We agree.
For the reasons assigned, the judgment of the district court is affirmed at plaintiff's costs.
AFFIRMED.