**Robert CRULL and Earlene Crull, Appellants (Plaintiffs Below),**

v.

**Harold PLATT, Sr., d/b/a/ Platt R.V. Sales, Shasta Industries, and Coachmen Industries, Appellees (Defendants Below).**

**SHASTA INDUSTRIES and Coachmen Industries, Appellees (Third-Party Plaintiffs Below),**

v.

**SUBURBAN MANUFACTURING COMPANY, Appellee (Third-Party Defendant Below).**

**No. 3–384A70.**

Court of Appeals of Indiana, Third District.

Dec. 19, 1984.

Rehearing Denied Jan. 23, 1985.

Charles W. McNagny, William F. McNagny, Barrett, Barrett & McNagny, Fort Wayne, for appellants.

Edward N. Kalamaros, Thomas Cohen, Edward N. Kalamaros & Associates Professional Corp., South Bend, for appellee Harold Platt, Sr., d/b/a Platt R.V. Sales.

R. Kent Rowe, Edmond W. Foley, Rowe & Laderer, South Bend, for appellee Suburban Mfg. Co.

James H. Pankow, South Bend, for appellees Shasta Industries and Coachmen Industries.

STATON, Presiding Judge.

Robert and Earlene Crull appeal from a Summary Judgment entered in favor of Platt R.V. Sales, Shasta Industries and Coachmen Industries in the Crulls' products liability action for personal injuries received in an explosion in their camper trailer. Summary judgment was also granted on the appellees' third-party complaint in favor of Suburban Manufacturing Company, manufacturer of the heating unit which was involved in the explosion. The third-party plaintiffs, appellees here, have not appealed that judgment.

We consolidate the issues presented for review by the Crulls as follows:

I. Did the trial court err in ruling as a matter of law that the proximate cause of the Crulls' injuries was the intervening acts of a third party?

II. Did the trial court err in granting summary judgment when outstanding discovery requests by the Crulls remained unanswered?

There is no dispute regarding the basic facts in this case. In October, 1981 the Crulls purchased a new Shasta R.V. trailer from Platt R.V. Sales. They planned to use the trailer later in the month for a trip to Washington, D.C. The trailer was inspected and prepared by the dealer, and the Crulls were given instructions on the operation and use of the various appliances, including the propane gas heating unit.

On the first night of the trip when the Crulls lighted the heater and turned up the thermostat, a fuse blew and the heater shut down. They stopped at a Shasta dealership in Chambersburg, Pennsylvania the next day where they were told there were electrical problems and a fuse was replaced. That evening when the Crulls attempted to operate the heater the fuse blew again. The following morning the Crulls took the trailer to Cass Trailer Sales near Washington, D.C. They explained their problems with the heating unit and, after an inspection, repairman Henry Barkley removed the heater from its housing in the trailer and took it into the shop to work on it. Barkley discovered that wiring within the unit was crimped or cut causing the furnace to short out when operated. At his deposition, he testified that the condition of the wiring most likely occurred during original assembly of the heating unit. He repaired the wiring and relocated it within the heater so it would not be pinched. After testing the unit and determining the electrical problem was correct-

ed, Barkley replaced the heater in the R.V. Barkley could not recall reconnecting the gas line to the heater when he reinstalled it in the trailer, nor did he run the extensive tests he ordinarily performed after reinstalling a unit. Among the omitted tests was a test for the presence of gas leaks.

That evening Mr. Crull once again attempted to light the heater. When he struck a match an immediate explosion occurred, seriously burning Mr. and Mrs. Crull and destroying the trailer. An expert who examined the trailer two months later, testified on deposition that the gas line from the propane tank was not connected to the heater; that it did not appear to have been disconnected by the explosion; and that all the evidence was consistent with a gas explosion external to and independent of the heating unit itself.

The Crulls' complaint alleges that their damages are a proximate result of the dangerous and defective condition of the electrical system which occurred when the trailer was manufactured by Shasta Industries, a subsidiary of Coachmen Industries. They further allege that Shasta and Platt R.V. Sales failed to inspect the vehicle for defects or to warn the Crulls of the defective condition. Shasta and Coachmen filed a third-party complaint for indemnification against Suburban Manufacturing Company, the manufacturer of the heating unit.

Our oft-repeated standard of review of a summary judgment is quite clear. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.R.Tr.P. 56(C). Summary judgment should not be granted if the facts give rise to conflicting inferences which would alter the outcome. Even though conflicting facts on some elements exist, summary judgment may be proper when there is no dispute or conflict regarding a fact which is dispositive of the action. *Bridgewater v. Economy Engineering Co.*, (1984), Ind.App., 464 N.E.2d 14, 16.

### I.

### Proximate Cause

The Crulls do not dispute that the explosion occurred because the disconnected gas line allowed propane to escape and build up, igniting when Mr. Crull struck a match. They argue, rather, that but for the original defect in the heater wiring they never would have needed to seek repairs in the first place and Barkley would not have had the opportunity to commit his tragic error.[1]

The concept of proximate cause has bedeviled many a court and scholar, which may explain why it is generally considered a question of fact best left to the jury. *Bridgewater v. Economy Engineering Co., supra* at 17. In determining whether a negligent act or omission is the proximate cause of an injury the test is whether the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 158. The key is the foreseeability of the ultimate injury as a natural and probable consequence of the act or omission. *Id.* A rule related closely to the foreseeability requirement is that an intervening cause may cut off the liability of the original actor. *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847, 852.

Quoting 21 I.L.E. Negligence § 67 at 330–33 (1959), the Supreme Court in *Havert, supra,* wrote:

"An intervening cause, with respect to the doctrine of proximate cause, means,

---

1. At the summary judgment stage of the proceedings the Crulls began to argue the additional theory of defective design of the trailer and the heater housing. They urge that Barkley's opportunity to blunder and the Crulls' inability to discover the blunder was further enhanced because the gas line connection was hard to see or access without removing the entire heater. We do not find, however, that this additional theory alters the outcome of the proximate cause analysis.

not a concurrent and contributing cause, but a superseding cause, which is itself the natural

"and logical cause of the harm or the immediate and direct cause of the injury; and where the cause of an injury or death is the negligent act of an independent responsible intervening agency, such act must be regarded as the proximate cause thereof and the original negligence considered as only the remote cause.

. . . . .

[w]here there is an independent responsible agency intervening between the defendant's negligence and the injury, the question whether the original negligence is the proximate cause of the injury is to be determined by whether the agency might have been reasonably expected under the circumstances to intervene in such a way as to be likely to produce an injury similar to the one actually caused."

452 N.E.2d at 158–59. *See, also, New York Central Railroad Company v. Cavinder* (1965), 141 Ind.App. 42, 211 N.E.2d 502, 508.

█ In connection with proximate cause it is generally for the jury to determine whether an intervening cause was such as to break the causal connection between defendant's act and the injury. *Elder v. Fisher, supra* 217 N.E.2d at 852; *State v. Edgman* (1983), Ind.App. 447 N.E.2d 1091, 1099; *New York Central Railroad Company v. Cavinder, supra* 211 N.E.2d at 509. In plain and indisputable cases, however, where only a single inference or conclusion can be drawn, the question of proximate cause and intervening cause are matters of law to be determined by the court. *Fruehauf Trailer Division v. Thornton* (1977), 174 Ind.App. 1, 366 N.E.2d 21, 25; *Petroski v. NIPSCO* (1976), 171 Ind.App. 14, 354 N.E.2d 736, 744.

█ For independent intervening conduct to prevent the extension of liability to the conduct of the original wrongdoer, the later conduct must constitute a cause interrupting the natural sequence of events, turning aside their course, preventing the natural and probable result of the original act or omission, and producing a result that could not have been reasonably anticipated. *Yater v. Keil* (1976), 170 Ind.App. 135, 351 N.E.2d 920, 923–24. We find, without hesitation, that the foregoing principle is a precise description of the situation in the case at bar. Even though the defendants may have been responsible for the defective wiring condition which caused the Crulls to seek repairs, that defective wiring had no part in causing the injury producing explosion. The repair of the wiring, in essence, turned aside or interrupted the foreseeable consequences of the damaged wiring. The defective condition no longer existed when the ultimate injury occurred.

█ It is a well settled principle that when defendant's negligence merely creates a condition by which the subsequent injury-producing acts of another are made possible, the *existence* of the first condition cannot be the proximate cause of the injury. *State v. Edgman, supra* at 1101; *Schroer v. Edward J. Funk & Sons, Inc.,* (1968), 142 Ind.App. 223, 233 N.E.2d 680. In this case, we cannot even say the condition existed when the injury occurred, and even if Barkley had failed to repair the wiring properly, it is undisputed that the explosion was caused by a lighted match igniting the propane escaping from the disconnected gas line, and not by any malfunction within the heating unit itself. We cannot hold the retailer and manufacturer to have reasonably foreseen that a repairman would fail to reconnect the gas line—a procedure which Barkley himself testified he had done hundreds of times without fail. We realize that foreseeability does not mean the precise hazard or exact consequences should have been foreseen, but neither does it encompass anything which might conceivably occur. *Peck v. Ford Motor Co.,* 603 F.2d 1240, 1246–47 (7th Cir. 1979). As the Court in *Peck* noted, to sustain a plaintiff's claim on the basis that a defective product was in any way associated with an injury-producing accident would result in making the manufacturer a

virtual insurer of the product, *Id.* at 1247, and that is not the law in Indiana. *Hoffman v. E.W. Bliss Co.*, (1983), Ind. 448 N.E.2d 277, 281. We hold that the undisputed evidence permits only one reasonable conclusion on the question of proximate cause. It is that the intervening act of Henry Barkley, in failing to reconnect the gas line, was the proximate cause of the Crulls' injuries, superseding any liability of the defendants for the defective wiring.

## II.

### Discovery

 The Crulls presented third-party defendant Suburban Manufacturing Company with extensive interrogatories and requests for discovery. When these requests had not been answered after some five months or more, the Crulls moved the court for an order to compel discovery. The court initially granted the motion, but apparently in light of the defendants' motions for summary judgment, the court granted Suburban's motion for an extension of time to respond to discovery and announced that it would reconsider the motion to compel at the time of the summary judgment hearing. There is no indication in the record that the court ever made a specific ruling upon reconsideration of the motion to compel discovery; nor is there any record of the Crulls requesting that the court make such a ruling at the summary judgment hearing. Where there is no final ruling on a motion, there is nothing for this Court to consider on appeal. *State v. Edgman, supra* at 1099. Even if the trial court had denied the motion to compel, however, (which it effectively did by agreeing to reconsider and then granting summary judgment without ruling) we are unable to find prejudicial error which would require reversal. The trial court has broad discretion in ruling on issues of discovery and this Court will interfere only where an abuse of discretion is apparent. *City of Bloomington v. Chuckney* (1975), 165 Ind. App. 177, 331 N.E.2d 780, 784. Inherent in the trial court's power to prescribe the terms and conditions of discovery is the discretion to change or modify its orders as subsequent events may warrant. *Coster v. Coster* (1983), Ind.App. 452 N.E.2d 397, 400. Coupled with the harmless error doctrine, the broad discretion of the trial court will usually bar reversal. *Id.*

 The information sought by the Crulls concerned details of the design and manufacture of the Suburban heating unit; reports of accidents or complaints related to defects in the heating unit; advertising, marketing and production information regarding the unit, and so forth. Since we have held that the defective condition of the heater was not the proximate cause of the accident, information on the incidence, origin or magnitude of such defects would not alter the view that Henry Barkley's conduct was an unforeseeable, intervening cause of the accident. The trial court would not have abused its discretion in denying the motion to compel and there was no prejudice in proceeding to summary judgment without an actual ruling on the motion. *See, e.g. State v. Edgman, supra.*

The trial court's judgment is, therefore, affirmed.

HOFFMAN, J., concurs.

GARRARD, J., concurs in result.