**FMC CORPORATION, Appellant,**

v.

**Sharon K. BROWN, Administratrix of the Estate of Danny R. Brown, Deceased, Appellee.**

No. 18A04–8611–CV–00350.

Court of Appeals of Indiana, Fourth District.

July 28, 1988.

Frank E. Gilkison, Beasley, Gilkison, Retherford, Buckles & Clark, Muncie, Stephen M. Shapiro, John E. Muench, Mayer, Brown & Platt, Chicago, Ill., Russell H. Schussler, Robert L. Bever, Harlan, Schussler, Keller, Boston & Bever, Richmond, for appellant.

Perry W. Cross, P. Gregory Cross, Cross, Marshall, Schuck, Deweese, Cross & Feick, P.C., Muncie, for appellee.

MILLER, Presiding Judge.

On November 4, 1981, Danny Brown, a 28–year–old construction worker, was electrocuted when the hoist line of a crane being used to move a load of metal forms contacted an energized power line while his hand was touching the load. His widow and administratrix of his estate, Sharon K. Brown, brought a wrongful death products liability suit on behalf of herself and their two children against FMC Corporation, manufacturer of the crane. Brown contended FMC was liable for damages resulting from the death of her husband because it had manufactured and sold its crane to Brown's employer in a defective condition unreasonably dangerous to users. FMC answered that Brown had incurred the risk of his death, was guilty of contributory negligence, and the crane had been misused. After a jury trial, the court entered judgment on the jury's verdict in favor of Brown and against FMC in the sum of $2,900,000.00. FMC raises four issues for consideration on appeal:

I. Whether the trial court erred in denying FMC's Motion for Judgment on the Evidence because FMC had no duty to protect against the open and obvious danger associated with use of its crane in proximity to a high-voltage power line.

II. Whether the trial court erred in denying FMC's Motion for Judgment on the Evidence because FMC had no duty to install an insulated link or proximity warning alarm devices on its cranes and the absence of those devices was not the proximate cause of injury.

III. Whether the trial court erred in ruling that the open and obvious nature of the danger constituted an affirmative defense, in instructing the jury that defendant FMC had the burden of proof thereon, and in denying FMC its right to conduct a voir dire examination of the jury on this critical issue.

IV. Whether the trial court erred in denying FMC's Motion to Withdraw the Issue of lost future earnings from the jury because there was not evidence of the present value of lost future earnings, in erroneously instructing the jury regarding damages, and in failing to set aside the jury's damage award as grossly excessive and grant FMC a new trial.

We reverse on Issue III, but will address the other issues as they may recur on retrial.

## FACTS

The facts, stated in the light most favorable to the judgment, are as follows. On November 4, 1981, Danny R. Brown was employed by Bowen Engineering Corporation as a laborer in the construction of a sewage treatment plant at Galveston, Indiana. At approximately 11:30 a.m. on that date, Roll Hamilton, another Bowen employee, was operating a Linkbelt model LS–108B crane to move a load of metal forms weighing approximately 900 pounds. The crane had been manufactured by the defendant, FMC Corporation, and sold to Bowen on February 10, 1975. At the time of the incident, the crane was positioned on an east-west service road at the northernmost edge of the project, roughly parallel to a set of power lines carrying a phase to ground voltage of 7,200 volts. Although the crane had been used in the vicinity of the service road on the first day of the project several months before, it had not again been used in that area until that day. The forms were to be removed from a location immediately south of the service road and placed out of the way of the workmen at some point on the north side.

Directly to the north of the road, the ground sloped downward precipitously, rendering that area unsuitable for the placement of such loads.

As the load was lifted by FMC's crane, Brown prepared to receive it by laying a pair of boards at the bottom of the bank, at a point constituting the closest possible place to the road at which it could be set. Although the job supervisor stated he had ordered the load set atop the bank, more favorable to the verdict is the testimony of the crane operator that the supervisor had generally indicated the load be set somewhere well to the north of the road, placement on the bank being impossible. As the crane boom came around, swinging in a clockwise direction, the load line descending from the boom came in contact with the energized line. The cab of the crane is designed so the operator's vision is obstructed to the right by the boom when swinging that direction, and the operator was not able to see the lines at the point of contact. Danny Brown, who was touching the load at that instant, was grounded and electrocuted when a current flowed down the line into the load and through his body to the ground. At the time of this incident, he was 28 years of age, with a life expectancy of 45.4 years. He left surviving him as dependents Sharon K. Brown, his wife of six months, their five-year-old son and three-year-old daughter.

Sharon Brown brought this wrongful death products liability suit on behalf of herself and her two children against FMC, manufacturer of the crane, and contended FMC was liable because FMC had manufactured and sold its crane to Brown's employer in a defective condition unreasonably dangerous to users. Brown asserted that either of two devices, a proximity warning device or an insulated link, would have prevented this accident and that the existence of this technology, which would eliminate the hazard that killed Brown (inadvertent contact of a crane with energized power lines), had been known to FMC for over thirty years. FMC responded that

Brown had incurred the risk of his death, was guilty of contributory negligence, and the crane had been misused because Brown had disregarded (1) his supervisor's instructions as to where to place the load, (2) the two warnings on the crane regarding power lines, and (3) the open and obvious danger of placing the crane's arm on the power line.

A three week jury trial began on May 16, 1986. Evidence at trial showed FMC's crane was not designed, manufactured or sold with either of the two devices, a proximity warning device or an insulated link, which would have prevented this accident according to every witness who testified on the subject.

A proximity warning device detects the presence of the electric field surrounding energized lines, giving off an audio visual alarm. An insulated link serves the same essential function as a "headache ball" in weighing down the end of the line so as to prevent kinking, and the link is insulated and designed to stop the conduction of electricity. Although there are approximately 500 deaths and serious injuries each year from crane-power line contacts, there has never been a reported case of a death or serious injury where either device was installed and being used correctly. FMC knew this type of accident was one of the leading causes of injury in the construction industry since at least the 1950's, and knew of the existence of these devices for about the same time, yet did not incorporate them into the design of its crane, did not offer them to customers as optional equipment, and did not even inform crane buyers of their existence. As a result of Brown's death, his employer learned of the existence of insulated links and had them installed on all of its cranes. There have been no subsequent accidents.

■ The jury returned a verdict in favor of Brown and against FMC in the amount of $2,900,000.00. The trial court entered judgment on the jury's verdict on June 3, 1986. FMC now appeals from this judgment.[1]

1. In its Statement of Facts, FMC presents a witness-by-witness recitation of the evidence fa-

vorable to its position, attempting to discredit the verdict. FMC's brief, therefore, does not

## DECISION

### I. *Open and Obvious Danger as a Matter of Law*

■ FMC argues on appeal it is entitled to judgment in its favor as a matter of law under the *Bemis* open and obvious danger doctrine. In *Bemis v. Rubush Co.* (1981), Ind., 427 N.E.2d 1058, the court stated the rule as follows:

"In the area of products liability, based upon negligence or based upon strict liability under § 402A of the Restatement (Second) of Torts, to impress liability upon manufacturers, the defect must be hidden and not normally observable, constituting a latent danger in the use of the product. Although the manufacturer who has actual or constructive knowledge of an unobservable defect or danger is subject to liability for failure to warn of the danger, he has no duty to warn if the danger is open and obvious to all."

*Id.* at 1061.

The court clarified the effect of the open and obvious danger doctrine in *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484.

"In *Bemis,* we *did not* hold that the question of whether an alleged danger is open and obvious is a matter of law in *all* cases. *Bemis* involved a set of facts that was not in conflict and that left no general issue as to any material fact except for the question of whether the danger was open and obvious."

*Id.* at 488. (Emphasis in original)

In *Bemis,* the plaintiff was injured when he was struck by a descending shroud on a batt packing machine. The facts were not in conflict and the plaintiff admitted the danger was open and obvious. *Bemis, supra* at 1060. But, in *Hoffman v. E.W. Bliss Co.* (1983), Ind., 448 N.E.2d 277, the court was presented with a different factual setting. In *Hoffman,* the plaintiff was injured when a press descended on his hand. Evidence was presented that an internal dysfunction of the press could cause it to recycle and descend, even though the operator did nothing to activate it. Thus, the court concluded that, although the danger in placing one's hand in the press was open and obvious as a matter of law, it was a question of fact whether the descent of the press as a result of an internal dysfunction was open and obvious.

When the facts or the reasonable inferences to be drawn therefrom are in conflict, the open and obvious nature of the danger is a question of fact for the jury. This is, in essence, the same standard to be applied in ruling on a motion for judgment on the evidence. Therefore, we must consider whether the trial court properly denied FMC's motion for judgment on the evidence.

On review, this court is bound by the same standards as the trial court in ruling on the motion for judgment on the evidence. *Kroger Co. Sav–On Store v. Presnell* (1987), Ind.App., 515 N.E.2d 538, *trans. denied.* Judgment on the evidence may properly be granted only when there is no evidence on one or more of the essential elements of the plaintiff's cause of action, or the evidence with respect thereto is without conflict and leads only to inferences favorable to the moving party. Ind. Rules of Procedure, Trial Rule 50(A); *Tancos v. A.W., Inc.* (1986), Ind.App., 502 N.E.2d 109. The trial court may consider only the evidence and reasonable inferences most favorable to the non-moving party. *Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383. If there is any evidence of probative value or reasonable inferences to be drawn therefrom sufficient to support the claim, judgment on the evidence is improper. *Kroger, supra* at 543.

"Whether a danger is open and obvious depends upon how broadly one construes the word 'danger' in the 'open and obvious

comply with Appellate Rule 8.3(A)(5), nor with the numerous decisions of Indiana's appellate courts specifying that the Statement of Facts shall be a concise narrative of facts, stated in the light most favorable to the judgment, and shall not be argumentative or summarize the testimony of each witness. *Lucas v. Frazee* (1984), Ind.App., 471 N.E.2d 1163; *Miller v. State* (1983), Ind.App., 449 N.E.2d 1119.

*danger* rule.'" (Emphasis in original) *Hoffman, supra* at 285. Even though a person may be aware of a general danger, defects in the product may create an additional danger which is not open and obvious. *See Corbin v. Coleco Industries, Inc.* (1984), 7th Cir., 748 F.2d 411; *Hoffman, supra.*

In this case, there was testimony both the crane operator, Roll Hamilton and the decedent, Danny Brown, were aware of the power lines and the danger of electrocution resulting from the crane contacting the lines. These facts were not in conflict. As a matter of law the danger resulting from a crane contacting a power line is open and obvious. However, this does not end our inquiry.

The Seventh Circuit Court of Appeals, interpreting Indiana law in *Corbin, supra,* reasoned:

"Whether a danger is open and obvious depends not just on what people can see with their eyes but also on what they know and believe about what they see. In particular, if people generally believe that there is a danger associated with the use of a product, but that there is a safe way to use it, any danger there may be in using the product in the way generally believed to be safe is not open and obvious."

*Id.* at 417–18. This court adopted this reasoning in *Kroger, supra.*

Brown presented evidence of studies which showed neither crane operators nor signalmen on the ground are capable of accurately judging clearance distances between the crane and power lines.[2] Evidence was also presented that a crane operator can work within ten feet of a power line without violating OSHA standards. A warning decal affixed to the crane by the manufacturer warned the operator to stay at least fifteen feet from power lines. Roll Hamilton, the crane operator, testified he believed he was twenty feet from the power lines, outside the distance required by OSHA and the distance specified in the warning decal. The evidence also revealed the cab of the crane was designed so that the operator's vision was obstructed to the right when the boom was moving in that direction, making it impossible for him to see the lines. The evidence also showed crane operators routinely work in close proximity to power lines.

There was evidence of probative value from which the jury could have inferred that reasonable men believe it is safe to operate a crane near power lines, if the crane is ten to fifteen feet away from the lines. *Brown v. Northern Indiana Public Service Co.* (1986), Ind.App., 496 N.E.2d 794, is instructive on this point. *Brown* involved a virtually identical crane/power line accident. Ironically, the plaintiffs even share the same last name. The plaintiff in *Brown* was guiding a load of pipe being moved by a crane which touched a power line. Although *Brown* was a negligence action against the power company, which the court held was not subject to the open and obvious danger rule, the court in reversing summary judgment for the defendant, stated: "We are unable to say as a matter of law that Brown exposed himself to dangers so obvious, imminent, and glaring that no reasonable man exercising due care for his safety would have hazarded them." *Id.* at 798. The jury could have concluded the fact the crane, in reality, was much closer was not open and obvious.

FMC relies primarily on two cases, *Braxton v. Georgia–Pacific Corp.* (1982), La. App., 419 So.2d 125, and *Skyhook Corp. v. Jasper* (1977), 90 N.M. 143, 560 P.2d 934, involving similar factual situations, which held the danger was open and obvious. These cases are distinguishable from the case at bar. No evidence was presented in either of the cases to show the workers' inability to accurately judge the distance between the cranes and the power lines, nor was there evidence that the cabs of the cranes blocked the operators' view of the lines. In the absence of such evidence the danger appears to be open and obvious.

2. The studies showed crane operators misjudged the distance 85% of the time, while signalmen were wrong 80% of the time.

Here, there was evidence the danger was not open and obvious. The trial court did not err in denying FMC's motion for judgment on the evidence.

## II. *Duty to Install Safety Devices*

FMC contends the trial court erred in denying its motion for judgment on the evidence because FMC had no duty to install safety devices and the absence of these devices was not the proximate cause of the injury.

■ FMC first contends whether it had a duty to install safety devices was a question of law for the court and not a question of fact for the jury. Although the existence of a duty is entirely a question of law, *Koroniotis v. LaPorte Transit, Inc.* (1979), Ind.App., 397 N.E.2d 656, 658, FMC has misconstrued the meaning of "duty" in this case. FMC's duty was to market a product which was not "in a defective condition unreasonably dangerous to any user or consumer." IND.CODE 33–1–1.5–3. The question is not whether FMC had a duty to install safety devices, but whether the absence of such devices rendered the product defective and unreasonably dangerous. *See Gilbert v. Stone City Construction Co.* (1976), 171 Ind.App. 418, 357 N.E.2d 738. This was a question of fact. *Id.* 357 N.E.2d at 745.

■ A product may be unreasonably dangerous due to the failure to provide feasible safety devices to protect the user from foreseeable mishaps. *Id.* 357 N.E.2d at 744. Brown presented evidence of two feasible safety devices—the proximity warning device, which sounds an alarm when the crane's boom comes near a power line and an insulated link, which resists the flow of electricity through the load line and reduces the chance of serious injury to a worker in Brown's situation, who is in contact with the load when the crane or load line contacts a power line.

■ FMC argues the effectiveness of these devices is unproved and they may act as traps, lulling the operator and laborers into a false sense of security. The argument is merely an invitation for this court to reweight the evidence, which we may not do. *Kroger, supra.*

There was testimony from two crane operators who contacted power lines while operating cranes equipped with an insulated link. In both incidents workers were in contact with the loads, yet no serious injuries resulted from the accidents. The evidence also revealed there are approximately five hundred crane/power line accidents each year which result in serious injury or death. Approximately five percent of the cranes in use in the United States are equipped with one of these safety devices. None of the witnesses, including FMC's expert witnesses, knew of a single accident involving a crane so equipped which resulted in serious injury or death. There was ample evidence from which the jury could have concluded the safety devices were feasible and a crane lacking such devices was unreasonably dangerous.

■ FMC also argues it had no duty to install safety devices because the crane was in compliance with applicable Occupational Safety and Health Administration standards. This is no more than an attempt to raise the state of the art defense provided by IND.CODE 33–1–1.5–4(b)(4). This is a statutory affirmative defense. *See Rice v. Grant County Board of Commissioners* (1984), Ind.App., 472 N.E.2d 213. As such, FMC was required to plead it or have it litigated by consent of the parties. Ind.Rules of Procedure, Trial Rule 8(C); *Lafary v. Lafary* (1985), Ind.App., 476 N.E.2d 155. FMC did not do so. By failing to do either, FMC has waived this issue on appeal. *Id.*

FMC argues the jury was allowed to speculate, in retrospect, on the wisdom of incorporating such safety devices and relies on *Shanks v. A.F.E. Industries, Inc.* (1981), 275 Ind. 241, 416 N.E.2d 833, for the proposition that such speculation is not permitted. FMC's reliance is misplaced. *Shanks* is factually distinguishable from the case at bar. In *Shanks*, the plaintiff was seriously injured while repairing a defective bucket in an elevator leg which was part of a grain handling complex. The elevator leg, consisting of a chain of buck-

ets enclosed in a metal housing, was automatically activated by the grain dryer when it began its unloading phase. This occurred even though the switch for the elevator leg was in the off position. The plaintiff had turned off the switch for the elevator leg, but was unaware it would activate automatically when the dryer began the unloading phase. He was injured when the elevator leg was activated. The plaintiff sued .the manufacturer of the grain dryer alleging the failure to install warning signals when the unloading phase was activated was a design defect. The court reasoned:

"The need for any warning devices, and the circumstances surrounding their use, would, of course, depend upon the operation of the whole complex, based upon the features of its design. Thus, because the dryer could be incorporated into a variety of grain handling systems, the desirability or need for such devices could be determined only *after* any given type of complex had been chosen and created. Of course, A.F.E. here had no way of knowing exactly how Whittington would employ its dryer and, hence, the specific context in which such warning devices could or should be used relative to the operation of an elevator leg."

*Id.* 416 N.E.2d at 838. *Shanks* does not stand for the proposition that the need for safety devices is too speculative in all cases. *Shanks* held, in the factual situation presented in that case, the manufacturer could not have foreseen the kinds of safety features, if any, which were needed.

Next, FMC contends the failure to install safety devices was not the proximate cause of Brown's death. Instead, FMC argues, the actions of Hamilton, Brown and their supervisor, George Price, were the proximate cause of the accident.

■ "A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence, which in light of the circumstances, should reasonably have been foreseen or anticipated." *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 158. There may be more than one proximate cause of an injury. *Meadow-*

*lark Farms, Inc. v. Warken* (1978), 176 Ind.App. 437, 376 N.E.2d 122. The key to determining legal proximate causation is reasonable foreseeability. *Id.* 376 N.E.2d at 129. An intervening act of a third party will not break the chain of causation extending from the original wrongful act, if that intervening act is reasonably foreseeable. *Miller v. Faulkner* (1987), Ind.App., 506 N.E.2d 52, 55.

■ The determination of proximate cause is generally a question of fact. *Crull v. Platt* (1984), Ind.App., 471 N.E.2d 1211. Proximate cause becomes a question of law only when the facts are not in conflict and only one inference can be drawn therefrom. *Id.* at 1216.

■ Here, there was evidence FMC was aware of the number of serious injuries resulting from crane/power line accidents, the fact cranes are routinely used near power lines, and the availability of the safety devices. We cannot say, as a matter of law, FMC's failure to install the safety devices was not the proximate cause of Brown's death.

■ Finally, FMC argues the trial court's judgment imposes a duty on manufacturers to install such safety devices, which brings the law of Indiana into irreconcilable conflict with federal law in violation of the Supremacy Clause of the United States Constitution. FMC raises this issue for the first time in its appeal brief. By failing to raise the issue in the pleadings, trial or motion to correct errors, FMC has waived it. *Wallace v. Indiana Ins. Co.* (1981), Ind.App., 428 N.E.2d 1361. Even if the issue had not been waived, the argument is meritless. FMC cites the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.* in support. This Act applies to employers and employees, not manufacturers. In addition, the applicable rule provides: "Cage type boom guards, insulating links, or proximity warning devices may be used on cranes, but the use of such devices shall not alter the requirements of any regulation of this part even if such device is required by law or regulation." 29 C.F.

R. § 1926.550(a)(15)(2). The judgment of the court is not in conflict with federal law.

### III. Open and Obvious Danger as an Affirmative Defense

FMC contends the trial court erred in ruling the open and obvious nature of the danger constituted an affirmative defense and improperly instructed the jury the burden of proof on this issue was on the defendant. We agree.

The determination of whether a defense is affirmative depends upon whether it controverts an element of the plaintiff's prima facie case or raises matter outside the scope of the prima facie case. *Rice v. Grant County Board of Commissioners* (1984), Ind.App., 472 N.E.2d 213; *see* 2 A.J. Moore, *Moore's Federal Practice,* ¶ 8.19[1] (2d ed. 1984). As the *Rice* court explained: "an affirmative defense is one upon which the proponent bears the burden of proof and which, in effect, *admits* the essential allegations of the complaint, but asserts additional matter barring relief. Ind.Rules of Procedure, Trial Rule 8(C)." (Emphasis in original) *Rice, supra* at 214.

In order to establish a prima facie case of strict liability in tort the plaintiff must prove the product was "in a defective condition unreasonably dangerous to any user or consumer or to his property." *IND. CODE* 33-1-1.5-3. "Unreasonably dangerous" has been defined as "dangerous to an extent beyond that which would be contemplated by the ordinary consumer ... with the ordinary knowledge common to the community as to its characteristics." *Bemis, supra* at 1061. To be unreasonably dangerous a defective condition must be hidden or concealed. *Id.* "[W]hether a danger is open and obvious is the same as the question of whether a danger is concealed or hidden to the user in a given set of facts." *Bridgewater, supra* at 488.

Although *Bemis* did not directly address the question of the burden of proof, as Justice Hunter noted in his dissenting opinion, the majority in *Bemis* relied upon *J.I.*

*Case Company v. Sandefur* (1964), 245 Ind. 213, 197 N.E.2d 519, which in turn relied upon *Campo v. Scofield* (1950), 301 N.Y. 468, 95 N.E.2d 802.[3] The *Campo* court held: "if a remote user sues a manufacturer of an article for injuries suffered, he must allege and prove the existence of a latent defect or a danger not known to plaintiff or other users." *Id.* at 471, 95 N.E.2d at 803. Courts in other jurisdictions which apply the open and obvious danger doctrine have held the plaintiff has the burden of proof on this issue. *Parker v. Heasler Plumbing & Heating Co.* (1964), Wyo. 388 P.2d 516; *Maas v. Dreher* (1969), 10 Ariz.App. 520, 460 P.2d 191.

Evidence of the open and obvious nature of the danger serves only to negate a necessary element of the plaintiff's prima facie case, that the defect was hidden. This view is supported by several commentators:

> "The rationale supporting the open and obvious danger rule is that the plaintiff should be barred from recovery because of his culpable failure to avoid an apparent danger. This rationale is identical to that underlying the defenses of contributory negligence and assumption of risk. There are, however, important procedural distinctions between obviousness, on the one hand, and contributory negligence or assumption of the risk, on the other. The latter are defenses, with the burden of proof on the defendant, *whereas negation of obviousness is part of the plaintiff's burden of proof.*"

(Emphasis added). Phillips, "Products Liability: Obviousness of Danger Revisited", 15 IND.L.REV. 797, 804 (1982);

> "With respect to the affirmative defenses, the burden is upon the defendant to establish that the plaintiff's conduct was unreasonable under the circumstances or that the plaintiff knowingly encountered a known danger with appreciation thereof. However, the patent danger rule imposes upon the plaintiff the burden of

**3.** *Campo* was overruled by *Micallef v. Miehle Co.* (1976), 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571, which rejected the open and obvious danger doctrine as a complete bar to recovery.

pleading and proving latency, or negating patency."

*Annot.*, 35 A.L.R.4th 861, 865 (1985). We have been unable to find authority to the contrary.

When FMC asserted the danger was open and obvious, it was not admitting an essential allegation of the complaint and asserting additional matter which would bar relief, as it would in a true affirmative defense. Therefore, the open and obvious nature of the danger is not an affirmative defense and the burden of proof is not on the defendant.

Brown argues the Indiana Product Liability Statute places the burden of proof of *any* defense on the defendant, and would have us hold this includes negative defenses. This case is governed by the statute as written prior to the 1983 amendments. That statute read:

"(a) The defenses in this chapter are defenses to actions in strict liability in tort. The burden of proof of any defense raised in a product liability action is on the party raising the defense.

(b) With respect to any product liability action based on strict liability in tort:

(1) It is a defense that the user or consumer discovered the defect and was aware of the danger and nevertheless proceeded unreasonably to make use of the product and was injured by it.

(2) It is a defense that a cause of the physical harm is a nonforeseeable misuse of the product by the claimant or any other person. Where the physical harm to the claimant is caused jointly by a defect in the product which made it unreasonably dangerous when it left the seller's hands and the misuse of the product by one other than the claimant, then the concurrent acts of the third party do not bar recovery by the claimant for the physical harm, but shall bar any rights of the third party, either as a claimant or as a subrogee.

(3) It is a defense that a cause of the physical harm is a nonforeseeable modification or alteration of the product made by any person after its delivery to the initial user or consumer if such modification or alteration is the proximate cause of physical harm.

(4) Whenever the physical harm is caused by the plan or design of the product, it is a defense that the methods, standards, or techniques of designing and manufacturing the product were prepared and applied in conformity with the generally recognized state of the art at the time the product was designed or manufactured."

IND.CODE 33-1-1.5-4. All of the defenses enumerated in the statute are affirmative defenses, requiring proof of matter extrinsic to the plaintiff's prima facie case. The statute further states: "The common law of this state with respect to strict liability in tort is codified and restated as follows...." IND.CODE 33-1-1.5-3. Clearly, the legislature intended to incorporate the common law as it existed at the time of the adoption of the statute to the extent it was consistent with the statute. *See Corbin, supra* at 419. The open and obvious danger rule is a creation of common law and is not an affirmative defense. We do not believe the legislature intended to convert denials of the essential elements of the plaintiff's case in affirmative defenses.

▮ The trial court gave instruction number 4 listing as one of three affirmative defenses: "That the crane was not unreasonably dangerous because the alleged defective condition was open and obvious to the decedent Danny Brown." (Record at 93). In the same instruction, the court stated: "In a products liability action, the defendant has the burden of proving by a preponderance of the evidence any defense it may raise." (Record at 93). This instruction, placing the burden of proof on FMC, was an incorrect statement of the law.

It is well-settled that an instruction which places the burden of proof on the wrong party is reversible error. *Deckard v. Adams* (1965), 246 Ind. 123, 203 N.E.2d 303; *Harper v. James* (1965), 246 Ind. 131, 203 N.E.2d 531; *Johnson v. Samuels* (1916), 186 Ind. 56, 114 N.E. 977. The error was not cured by giving instruction

number 3, which correctly placed the burden of proving the product was unreasonably dangerous on Brown. As our supreme court explained in Deckard:

> "[T]his court has repeatedly enunciated the rule that the error of a bad instruction is not cured by the giving of correct instructions on the same subject. Such instructions are not viewed as a whole, with this court on appeal left to determine which of the contradictory instructions the jury should reasonably have believed."

Deckard, supra 203 N.E.2d at 306.

The trial court committed reversible error when it ruled the open and obvious danger doctrine was an affirmative defense and placed the burden of proving in on FMC.[4]

## IV. Lost Future Earnings

■ FMC contends the trial court erred in denying its motion to withdraw the issue of lost future earnings from the jury because there was no evidence of the present value of such earnings.[5]

FMC correctly asserts the plaintiff in a wrongful death action has the burden of proof on the issue of damages. Burnett v. State (1984), Ind., 467 N.E.2d 664. However, FMC further contends this burden includes proof of the present value of such earnings.

Our research has revealed no Indiana case directly on point. Under Indiana law, the measure of damages in a wrongful death action is the amount which will fairly compensate the decedent's beneficiaries for pecuniary losses sustained as a result of his death. Richmond Gas Corp. v. Reeves (1973), 158 Ind.App. 338, 302 N.E.2d 795. FMC relies on Abernathy v. Superior Hardwoods, Inc. (1983), 7th Cir., 704 F.2d 963, for the proposition the plaintiff must prove the present value of future earnings. In Abernathy, the court was presented with a claim that the jury's award was excessive in light of the evidence. The court, applying Indiana law, stated: "In gauging the reasonableness of an award of damages for a future loss, the court must consider the present discounted value of that loss." Id. at 973. The Abernathy court did not hold the plaintiff had failed to prove damages, but only that the jury's award was not consistent with the evidence. The court then ordered remittitur.

In Pennsylvania Railroad Co. v. McKinley (1961), 6th Cir., 288 F.2d 262, the Court of Appeals was faced with an identical question to that raised by FMC. The plaintiff brought an action for personal injury under the Federal Employers' Liability Act, claiming loss of future earning capacity. The United States Supreme Court had held, under the Act, future losses "should be made up on the basis of their present value only." Id. at 264; quoting Chesapeake & Ohio Ry. v. Kelly (1916), 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117. The McKinley court analyzed a line of Supreme Court cases and concluded evidence of present value was not a requirement for an award of damages. The court observed:

> "Jurors are presumed to be intelligent people, generally aware, from today's economy and their own experience with it, of the earning value of money when placed in safe investments. While, indeed, more could have been said on the subject, if request had been made, we cannot say that the jury misunderstood the trial judge when he told them that for future loss of earning capacity they were to award only the 'money value' of such loss and to award only such sum as would 'compensate' for the plaintiff's loss of future earning capacity. They were aware that their verdict would be presently and immediately placing money in the hands of the plaintiff as 'compensation' for these future losses."

Id. at 265.

Although evidence of present value may assist the jury in determining a reasonable

---

4. FMC also argues the trial court erred when it ruled FMC could not address this issue during voir dire. The court's ruling was based on the belief the open and obvious danger doctrine was an affirmative defense which was waived when FMC failed to plead it. Because we hold the doctrine is not an affirmative defense, we will not consider this issue.

5. FMC also contends the damage award was grossly excessive. Because we reverse, we will not consider this issue.

award, it is not essential to an award of damages.

FMC further contends the trial court erred in giving Final Instruction 25, which read:

"If you find from a fair preponderance of the evidence and under the instructions of this Court that the plaintiff is entitled to recover you should determine the amount of the damages which have been sustained by the decedent's wife, Sharon K. Brown, and his minor children, Chad Brown and Brandy Brown, on whose behalf the action is brought for the pecuniary losses which they have sustained by the death of Danny R. Brown. In determining the amount of the damages, you may take into consideration the age of the deceased, his health and his normal life expectancy. You may also consider the disposition and habits of the deceased, as shown by the evidence, his occupation, opportunities and earning capacity; the funeral expenses; the amount of money or other things of value furnished by the deceased to his wife and minor children, or the reasonable value of what the deceased's wife, and minor children during their minority, would have received during the lifetime of the deceased, had he lived. You may also consider the reasonable value of the loss of care, love and affection sustained by the decedent's wife, Sharon K. Brown, and the reasonable value of the loss of care, love and affections, and loss of parental training and guidance sustained by the decedent's minor children, during their minority.

From a consideration of all the elements above ascertained, as shown by the evidence, you may assess the damage for the death of Danny R. Brown at such sum as will fairly and fully compensate Sharon K. Brown and the minor children, Chad Brown and Brandy Brown, on whose behalf this action is brought for the pecuniary loss caused by the death of their husband and father."

(R. 114). FMC objected the instruction was an incorrect statement of the law because it did not mention present value. The instruction was a correct statement of the law, as far as it went. *Richmond Gas Corp., supra.* The record does not contain any instruction tendered by FMC on present value. A party may not complain an instruction is incomplete, when such party does not tender a more complete instruction. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613. The trial court did not err.

The judgment of the trial court is reversed and a new trial ordered.

SHIELDS, P.J., concurs.

CONOVER, J., dissents with separate opinion.

CONOVER, Judge, dissenting.

While I concur as to all other issues, I respectfully dissent as to the majority's holding FMC Corporation did not bear the burden of proving the danger was "open and obvious." In my opinion, FMC was required to plead it as an affirmative defense, then bore the burden of proving that defense at trial.

By statute, all statutory or common law defenses that may be raised in a products liability action other than mere denials of the elements of a plaintiff's cause of action, must be raised as affirmative defenses. IND.CODE 33–1–1.5–4(a) at the time this case was tried provided

(a) The defenses in this chapter are defenses to actions in strict liability in tort. The burden of proof *of any defense raised* in a product liability action is *on the party raising the defense.* (Emphasis supplied).

The plaintiff in a products liability action makes out a prima facie case when he proves (a) he purchased a defective product from a seller engaged in the business of selling such product, (b) the product reached the user or consumer without substantial change in its condition, and (c) the product caused physical harm to the user or consumer because of such defect. *Senco Products, Inc. v. Riley* (1982), Ind.App., 434 N.E.2d 561; *Ortho Pharmaceutical Corp. v. Chapman* (1979), Ind.App., 388 N.E.2d 541. Plaintiff is not required to

prove any additional elements to establish his cause of action, specifically in this case the danger was not "open and obvious." Such an element is a matter of defense.

Once plaintiff presents evidence establishing the three elements of his cause of action above-mentioned, the burden of going forward with the evidence shifts to the defendant seller. He may either (a) contest the elements of plaintiff's cause of action, or (b) prove by a preponderance of the evidence any affirmative defense he may have, either those statutorily created by I.C. 33–1–1.5–4(b), or any available common law defenses, such as the open and obvious defense in this case. The defendant may dispute any element of the plaintiff's cause of action under a general denial, but he must specially plead any other defense whether statutory or arising at common law as an affirmative defense and has the burden of proof thereon at trial, cf. I.C. 33–1–1.5–4(a), quoted above.

I believe the legislature intended to eliminate "surprise" as a weapon of attack and defense in the trials of products liability cases, as did the courts generally when the current rules of procedure were adopted. Discussing Trial Rule 16, the Civil Code Study Commission commented

> While opinions may vary as to the degree of its effectiveness, the pre-trial is generally thought to improve trials in the following respects: (1) it promotes lawyer preparedness; (2) it develops a clearer presentation of the opposing theories of the case; (3) it eliminates improper gaps and repetition in the evidence; and (4) it curbs the incidents of tactical surprise.

2 Harvey, INDIANA PRACTICE, Rule 16, p. 103, West Publ. Co. (1987). The legislature had the same intent when it enacted our Products Liability statute, I believe.

For those reasons it is my opinion FMC Corporation was required to specially plead and had the burden of proving at trial the danger was "open and obvious," as an affirmative defense under I.C. 33–1–1.5–4(a). Thus, the trial court did not err either by denying FMC the right to voir dire jurors on that issue, or by giving the instruction which placed the burden of proof of that issue on FMC.

For those reasons, I would affirm the trial court in all things.